**In re WORLD WINES, LTD., Debtor.**

**Bankruptcy No. 85 B 2556.**

United States Bankruptcy Court,
N.D. Illinois, E.D.

July 14, 1987.

McDermott, Will & Emery, Chicago, Ill., for Bates Abrasive Products, Inc.

Lord, Bissell & Brook, Chicago, Ill., for First Midwest Bank of Waukegan.

## MEMORANDUM OPINION AND ORDER

DAVID H. COAR, Bankruptcy Judge.

This cause coming on to be heard upon the Amendment to Application for Payment of Rental Arrearages, filed by BATES ABRASIVE PRODUCTS, INC., represented by McDERMOTT, WILL & EMERY, against the FIRST MIDWEST BANK OF WAUKEGAN, represented by LORD, BISSELL & BROOK, and the Court, having considered the record in this case, and the pleadings on file, and having examined the memoranda of law filed by the respective parties in support of their respective positions, and being fully advised in the premises;

The Court Finds:

1. World Wines, Ltd. was engaged in the business of importing and distributing at wholesale alcoholic and nonalcoholic beverages. On February 27, 1985, World Wines, Ltd. filed its voluntary petition under Chapter 11 of the Bankruptcy Code. World Wines operated its business as a debtor-in-possession until July 1, 1986, the date when the debtor, upon its own motion, converted its case to a Chapter 7. Bates Abrasive Products, Inc. [Bates] is the debtor's former landlord. First Midwest Bank of Waukegan [Bank] is the debtor's former secured creditor. The dispute between Bates and the Bank is centered around events which occurred while World Wines was operating its business under Chapter 11.

2. On July 27, 1984, World Wines granted the Bank a security interest and liens

upon all of its assets in order to secure the debtor's indebtedness to the Bank, which at the time of the Chapter 11 petition was approximately $2,875,000. On March 6, 1985, the Court entered the first of many orders which allowed World Wines to use the Bank's cash collateral in order to meet its business expenses while operating in Chapter 11. World Wines was required to make adequate protection payments to the Bank for the use of its cash collateral. Under the cash collateral order of March 6, 1985, World Wines waived, on behalf of itself and any subsequent trustees, the right to bring any claim against the Bank under Section 506(c) of the Bankruptcy Code.[1] 11 U.S.C. § 506(c).

3. World Wines leased warehouse and office facilities from Bates. These facilities were located at 622 South Oak Park Avenue, Chicago, Illinois. On May 14, 1985, the Court entered an order approving World Wines' assumption of the lease with Bates for the warehouse and office facilities located at 622 South Oak Park Avenue, Chicago, Illinois. In addition to setting forth World Wines' current monthly rental obligations, the terms of the order required World Wines to make payments on past due rents owed to Bates. On November 13, 1985, the Court entered an order modifying the May 14, 1985 order which approved World Wines' assumption of the lease with Bates. The November 13, 1985 order again set forth World Wines' current monthly rental obligations and it restructured World Wines' payment schedule on the rental arrearages. As indicated on the face of both orders, the rental arrearages were for prepetition rent defaults: January 1985, $5,950.00; February 1985, $5,950.00. The Bank was not a party to either the May 14th order or the November 13th order; nor was the Bank ever mentioned in these orders.

4. On May 7, 1987 World Wines and Bates presented to the Court an agreed

---

1. Paragraph 11 of the March 6, 1985 order provides:

The use of cash collateral of Bank [First Midwest Bank of Waukegan] pursuant to this Order shall be in lieu of and shall constitute a

waiver of any claims by the Debtor or any subsequent trustee in this or any subsequent proceeding under the Bankruptcy Code against Bank pursuant to Section 506(c) of the Bankruptcy Code or otherwise.

order authorizing the rejection of the subject lease, and approving World Wines' payment of rental arrearages in the amount of $12,500.00. On June 5, 1986, the Court entered an order authorizing World Wines to reject the lease with Bates, and this rejection was made effective May 1, 1986. The order also required World Wines to surrender possession of the warehouse and office facilities immediately. Bates' application for payment of rental arrearages from World Wines was continued by the June 5th order.

5. On May 13, 1986, the Bank brought an emergency motion requesting relief from the automatic stay imposed by Section 362 of the Bankruptcy Code. 11 U.S.C. § 362. On May 27, 1986, the Court lifted the automatic stay enabling the Bank to dispose of its collateral which, of course, included all of World Wines' assets: in particular, certain quantities of wine which were stored at the warehouse facility debtor had leased from Bates.

6. On June 17, 1986, Bates filed an amendment to its application for payment of rental arrearages. In its amended application, Bates now seeks payment of the $12,500 in rental arrearage from the Bank since there are no unencumbered assets in the debtor's estate which could be used to pay this rental arrearage. Bates' theory is that since the Bank did not object to the entry of the two orders which required the debtor to pay the rental arrearage under the assumed lease, the Bank gave its implied consent to the expenses created, and that the Bank derived a benefit from the lease inasmuch as the Bank's collateral was preserved. Bates insists that its application is predicated upon the protections afforded lessors under Section 365 of the Bankruptcy Code, and not upon Section 506(c) of the Bankruptcy Code which allows for the recovery of administrative expenses from the secured creditors' collateral. 11 U.S.C. §§ 365, 506(c). Bates argues that its application is brought simply to enforce the court orders which required the debtor to pay the rental arrearage under the assumed lease.

Secondly, Bates seeks rental payment or storage fees from the Bank at $231.67 per day for wine which was stored by the debtor at the warehouse facility from the date the automatic stay was lifted, May 27, 1986, until the time when the wine was removed, or two weeks later. The Bank was authorized to dispose of its collateral when the automatic stay was lifted. Bates posits that at this time the ownership in the wine was transferred from the debtor to the Bank, and, consequently, the Bank should be held accountable for these storage fees.

7. In response, the Bank argues that this Court lost jurisdiction to resolve the disputes which exist between the Bank and Bates when the automatic stay was lifted on May 27, 1986, which action enabled the Bank to liquidate its collateral. The Bank further argues that even if the Court has jurisdiction over these disputes, Bates, as a lessor, does not have standing under Section 506(c) inasmuch as that section limits rights of recovery against the collateral of the secured creditor to the trustee or debtor-in-possession. In addition, the Bank takes the position that Bates' right to recover against the Bank's collateral were waived by the debtor in the provision set forth in the cash collateral order.

DISCUSSION

I. *The Court's Jurisdiction*

■ The first issue to be addressed concerns whether or not this Court has subject matter jurisdiction to adjudicate Bates' claim for rental arrearage and its claim for storage fees both of which are directed at the Bank. Analysis of this issue begins with the proposition that bankruptcy courts lack jurisdiction to adjudicate controversies which are solely and exclusively between third parties and which do not involve, directly or indirectly, the debtor or its property. *First State Bank & Trust Co. v. Sand Springs State Bank*, 528 F.2d 350, 353 (10th Cir.1976); *Citizens Bank and Trust Company v. Melrose Park National Bank (In re Crystal Manufacturing & Packaging, Inc.)*, 60 B.R. 816, 818 (N.D.Ill.1986). Courts have consistently held that, if a controversy does not involve property in

which the debtor's estate asserts an interest, and the resolution of the claim will not affect the administration of the estate, then the bankruptcy court has no subject matter jurisdiction to adjudicate the claim. *In re Shirley Duke Assoc.*, 611 F.2d 15, 19 (2d Cir.1979); *In re Crystal Manufacturing & Packaging, Inc.*, 60 B.R. 816, 818; *In re Stoner Investments*, 20 B.R. 143, 145 (Bankr.N.D.Ill.1982).

From the date the debtor's Chapter 11 petition was filed, the lease between Bates and the debtor was property of the estate under Section 541, 11 U.S.C. § 541, until May 1, 1986, the date when the debtor's rejection of the lease became effective. The debtor's estate further asserted an interest in the lease upon its assumption which was approved by orders of court. These orders made provision for the rental arrearages. Bates' claim for rental arrearage arose while the lease was property of the estate and, therefore, this Court has jurisdiction to determine how that claim is to be satisfied, i.e., either against the assets of the debtor, or as a charge against the collateral of debtor's secured creditors, and such a determination in either event would be deemed a core proceeding. 28 U.S.C. § 157(b)(2)(A).

The debtor owned the wine which was stored at the warehouse facilities. The Bank was allowed to liquidate its collateral and to exercise its state law rights and remedies against the collateral, which included the stored wine, when the automatic stay was lifted on May 27, 1986. The order lifting the automatic stay directed the debtor to turn over the collateral to the Bank. The order did not, however, transfer ownership of the wine to the Bank. The debtor still owned the wine during the two-week period it remained on the lessor's premises. The debtor's ownership interest in the wine continued until such time as the Bank exercised its state law rights and remedies against the collateral. Bates' claim for storage fees is directed against property which at the time belonged to the debtor. This Court has jurisdiction to resolve Bates' claim which arises from the expenses generated from the storage of the debtor's property. Furthermore, this Court has jurisdiction to determine whether the storage of the wine should be charged to the debtor's secured creditor, the Bank, under Section 506(c). 11 U.S.C. § 506(c). These matters are central to the administration of the debtor's bankruptcy case, and as such, would be deemed a core proceeding under 28 U.S.C. Section 157(b)(2)(A). *See, In re Xonics, Inc.*, 65 B.R. 69 (Bankr.N.D.Ill.1986); *cf., In re Crystal Manufacturing*, 60 B.R. 816.[2]

II. *Bates' entitlements under Section 365.*

Section 365(a) provides that the debtor-in-possession, "subject to the court's approval, may assume or reject any executory contract or unexpired lease ..." 11 U.S.C. § 365(a). Section 365(b) provides that if there has been a default in the unexpired lease to be assumed, the debtor-in-possession may not assume the lease unless, at the time of assumption, (1) it cures or provides adequate assurance that it will promptly cure the default; (2) it compensates, or provides adequate assurance that it will promptly compensate the landlord for any pecuniary loss resulting from the default; and (3) it provides adequate assurance of future performance under the lease. 11 U.S.C. § 365(b)(1).

Where the lease has never been assumed, the lessor's damages are treated as a general unsecured claim. *See*, 11 U.S.C. § 502(g), § 365(g)(1). Leases which are assumed post-petition and then subsequently rejected are accorded administrative ex-

---

**2.** In *In re Crystal*, the debtor's former landlord initiated an adversary proceeding for rent against the debtor's former secured creditor based on a lease which had been executed subsequent to the lifting of the automatic stay. The district court overturned the order of the bankruptcy court finding that there was no subject matter jurisdiction over this landlord-tenant dispute because the trustee no longer had an interest in the property once the automatic stay was lifted. 60 Bankr. at 819. *In re Crystal* can be distinguished factually from the case at bar since the lease giving rise to the dispute between the third parties was executed after the lifting of the automatic stay.

pense priority under Section 365(g)(2).[3] That the claims resulting from assumed leases which were subsequently rejected are given administrative expense priority has been explained as follows:

> In contrast to the rejection of unassumed contract which arises from a transaction with the prebankruptcy debtor, the rejection of an assumed contract arises directly from a transaction with the debtor-in-possession. Thus, it is the debtor-in-possession which has caused legally cognizable injuries and the claims arising from those actions are entitled to priority as an administrative expense. [citation omitted]

*Samore v. Boswell (In re Multech Corp.),* 47 B.R. 747, 751 (Bankr.N.D.Iowa 1985). The court in *In re Multech* further reasoned that since the debtor's decision to assume a lease is subject to the approval of the court, the claim resulting from the subsequent rejection of the lease will be given the highest administrative expense priority.

> Because an executory contract has been scrutinized by the Court prior to assumption, the liabilities and expenses resulting from a subsequent rejection are automatically granted administrative priority that will not be subject to further limitation by section 503. [citation omitted] More bluntly, the Court would not permit the debtor-in-possession to assume an executory contract or lease unless the assumption was in the best interest of the estate. Having made that determination at the outset the liabilities and expenses arising from rejection of an assumed contract, unlike other costs of administration that have not been subject to court scrutiny, are no longer vulnerable to the limi-

tation on administrative expenses imposed by section 503.

*In re Multech Corp.,* 47 B.R. at 751–752.

In the case at bar, the entitlement extended to Bates under Section 365 when the Court approved of the assumption of the lease by the debtor was that upon the subsequent rejection of the lease Bates was given an administrative expense priority "second only to the administrative expenses incurred in the subsequent Chapter 7 proceedings." *In re Multech Corp.,* 47 B.R. at 752. The Court's approval of the lease, however, and the entitlements accorded to Bates under Section 365 is a separate and distinct question from whether the Bank's secured collateral should be charged for the damages which would result from the default. That question was never addressed by the Court when it approved the debtor's assumption of the lease. Bates has been given the full protection accorded lessors under Section 365, and to that extent, the Court's orders which approved the debtor's assumption of the lease have been, contrary to Bates' view, fully enforced.

## III. *Should the Bank's Collateral be Charged for the Rental Arrearage*

11 U.S.C. § 506(c) provides:

The Trustee may recover from property securing an allowed secured claim, the reasonable, necessary costs and expenses of preserving or disposing of such property to the extent of any benefit of the holder of such claim.

Administrative expenses will be charged to the secured creditor under Section 506(c) as long as those expenses are: (1) neces-

---

**3.** 11 U.S.C. Section 365(g) provides, in relevant part:

(g) ... the rejection of an executory contract or unexpired lease of the debtor constitutes a breach of such contract or lease—

(1) if such contract or lease has not been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title immediately before the date of the filing of the petition; or

(2) if such contract or lease has been assumed under this section or under a plan confirmed under chapter 9, 11, 12, or 13 of this title—

(A) if before such rejection the case has not been converted under section 1112, 1307, or 1208 of this title at the time of such rejection; or

(B) if before such rejection the case has been converted under section 1112, 1307, or 1208 of this title—

(i) immediately before the date of such conversion, if such contract or lease was assumed before such conversion; or

(ii) at the time of such rejection, if such contract or lease was assumed after such conversion.

sary; (2) beneficial to the secured creditor, and (3) reasonable. *In the Matter of Trim-X, Inc.,* 695 F.2d 296, 299 (7th Cir.1982).

 The Bank argues that recovery under Section 506(c) is limited to the trustee or the debtor-in-possession and that Bates, as a lessor, is, therefore, precluded from recovering under Section 506(c). Some courts have limited recovery under Section 506(c) to trustees and debtors-in-possession. *See, In re Air Center, Inc.,* 48 B.R. 693 (Bankr.W.D.Okla.1985) (Section 506(c) not available to employees, counsel, or landlord); *In re Fabian,* 46 B.R. 139, 141 (Bankr.E.D.Pa.1985) (Section 506(c) not available to landlord); 3 Collier on Bankruptcy, § 506.06 at 55 (15th ed. 1986). These cases, however, represent the minority view. 3 Collier on Bankruptcy § 506.06 at 56. Ample case authority exists which permits lessors to recover under Section 506(c) provided that the standards for recovery are met.[4] *In re Wyckoff,* 52 B.R. 164 (Bankr.W.D.Mich.1985) (recovery under Section 506(c) available to landlord); *National Bank of North America v. Isaac Cohen Clothing Corp. (In re Isaac Cohen Clothing Corp.),* 39 B.R. 199 (Bankr.S.D.N.Y.1984) (recovery under Section 506(c) available to landlord).

In the case at bar, Bates has not established that the services which generated its claim for rental arrearages were necessary and beneficial to the Bank. These rental arrearages were for prepetition defaults of the debtor and, therefore, the services these arrearages represent were not connected to the preservation of the Bank's collateral during the administration of the debtor's Chapter 11 case. The Court concludes that Bates is not entitled to recover from the Bank these rental arrearages as an expense of administration under Section 506(c).

 On the other hand, Bates' storage of the wine from the date when the secured creditor intended to liquidate its collateral on May 27, 1986 when the automatic stay was lifted, provided a necessary benefit to the Bank and the storage served to preserve the Bank's collateral. *In re Isaac Cohen Clothing Corp.,* 39 B.R. 199. Thus, pursuant to Section 506(c), Bates is entitled to be reimbursed by the Bank for the use and occupancy of its premises during this period.

Accordingly, for the reasons stated above, the Amendment to Application for Payment of Rental Arrearages filed by BATES ABRASIVE PRODUCTS, INC. is denied in part, and allowed in part, and a prove-up hearing on Bates' damage claim for storage fees is set for August 27, 1987 at 11:00 a.m.

---

**4.** The rationale behind this line of cases was explained by one commentator:

> The better view is that a secured creditor who received a direct benefit from the rendition of services or provision of goods by an administrative claimant of the estate should have the collateral charged for such benefit, regardless of whether the proceeds of such charge are paid to the debtor, debtor in possession or trustee as reimbursement for its prior payment to the claimant or are paid to the claimant directly. Otherwise, if the debtor, debtor in possession or trustee does not have available funds to pay the claimant, the debtor, debtor in possession or trustee has no economic incentive to seek a recovery under 11 U.S.C. § 506(c) of amounts which will be paid over to the claimant, and, as a result, the secured creditor obtains a windfall at the expense of the unpaid claimant. 3 Collier on Bankruptcy § 506.06 at 56.