**In re INTERNATIONAL CLUB ENTERPRISES, INC., Debtor.**

**Gertrude GELLER, Jerome A. Geller, Plaintiffs,**

v.

**INTERNATIONAL CLUB ENTERPRISES, INC., Defendant.**

**Bankruptcy No. 8800828. Adv. No. 891023.**

United States Bankruptcy Court, D. Rhode Island.

Sept. 19, 1989.

Andrew Richardson, Boyajian, Harrington & Richardson, Providence, R.I., for debtor.

Ira Schreiber, Schreiber & Schreiber, Cranston, R.I., for Gertrude and Jerome A. Geller.

Richard Nadeau, Jr., Providence, R.I., for Business Development Co. of Rhode Island.

## DECISION AND ORDER

ARTHUR N. VOTOLATO, Jr.,
Bankruptcy Judge.

Heard on May 16 and 17, 1989, on: (1) the Complaint of Jerome and Gertrude Geller ("the lessor") for possession of their business premises, and for compensation for use and occupancy by Business Development Company of Rhode Island ("BDC"), the secured creditor in the personal property; and (2) the Motion of BDC for Relief from Stay. On May 30, 1989, we granted Geller's request for possession of his building located at 1500 Oaklawn Avenue, Cranston, Rhode Island and also granted BDC's motion for relief from stay. Additionally, in that Order we held under advisement the lessor's claim for storing personal property held by BDC as collateral under a December, 1987 secured loan agreement. It is the lessor's claim for payment for storage of said personal property, with which we deal below.

## BACKGROUND

The following facts are relevant to this discussion: On November 1, 1987, the debtor, International Club Enterprises, Inc. ("ICE"), entered into a lease agreement with the Gellers for the subject premises, for use as a restaurant/nightclub, at a weekly rental of $1700. The personal property used in the debtor's business was pledged to BDC as collateral, pursuant to a December 23, 1987, secured loan agreement.[1] In less than one year of operation,

---

1. The debtor obtained a loan from BDC in the amount of $145,000 and entered into a security agreement covering the personal property which is the subject of this dispute.

2. During pretrial conferences, it was represented by BDC that its continued objections were in

ICE filed a Chapter 11 petition, on November 30, 1988. On January 24, 1989, ICE converted its Chapter 11 proceeding to a Chapter 7 case, and Louis Geremia, Esq. was appointed Trustee.

At the May 16 hearing, the Trustee gave uncontradicted testimony that on February 8, 1989, he informed BDC, through its attorney, Richard Nadeau, Esq., that the debtor had no equity in the collateral, and that he (the Trustee) was therefore abandoning said personal property. On February 22, 1989, BDC filed its Motion for Relief from Stay. With the premises still burdened by the personal property in question, the lessor, on March 7, 1989, filed the instant complaint seeking possession of the premises, and recovery for use and occupancy from the time of the Trustee's abandonment of the personal property. Numerous pretrial conferences were held to address these and other related matters, during which the lessor emphatically and persistently was demanding possession of the premises, and which demand was consistently opposed by BDC.[2]

## DISCUSSION

The lessor seeks to recover from BDC, pursuant to 11 U.S.C. § 506(c), the costs of storing and preserving the collateral for the period February 8 through June 20, 1989, when the personal property was eventually sold at public auction. BDC opposes this request, arguing that the Trustee's failure to observe the formal notice and hearing requirements for abandoning property under 11 U.S.C. § 554, prevented it from removing the property in conformity with statutory procedures.

1. Abandonment.

▇▇▇ We first address the question whether the Trustee effectively abandoned the property on February 8, 1989. 11

---

part related to ongoing negotiations with a third party who was contemplating purchasing the personal property and becoming the lessee of the premises. Because of the lessor's demand for use and occupancy, no sale ever materialized.

U.S.C. § 554(a) provides that "after notice and a hearing the trustee may abandon any property of the estate that is burdensome to the estate or that is of inconsequential value and benefit to the estate." The phrase "after notice and a hearing," as interpreted in Section 102(1), provides that "such notice as is appropriate in the particular circumstances" 11 U.S.C. § 102(*l*)(A), and "authorizes an act without an actual hearing if such notice is properly given and if such a hearing is not requested by a party in interest." 11 U.S.C. § 102(*l*)(B). In light of this interpretation, it has been held that "a trustee may abandon property without the involvement of the court if no party in interest objects to the action." *In the Matter of Trim–X, Inc.,* 695 F.2d 296, 300 (7th Cir.1982); *see also In re Motley,* 10 B.R. 141, 146 (Bankr.M.D.Ga.1981) ("absent objection, the trustee may abandon property of the estate without any order or approval of the court").

Based upon the testimony of the Trustee, and under the circumstances of this case, we conclude that BDC received sufficient and adequate notice of the Trustee's intention, and actual abandonment of the subject collateral. As previously stated, the Trustee telephoned BDC's counsel on February 8, 1989, and informed him specifically and clearly that because of the lack of equity, the estate had no interest in the property, and it was therefore being abandoned. In the absence of objection to the Trustee's February 8, 1989 informal but clear notice of abandonment, judicial involvement was not required to constitute an abandonment. Accordingly, we conclude that the Trustee acted within his authority, and that an effective abandonment was accomplished at least as early as February 8, 1989.

2. Standing.

■ We have been asked to consider next the lessor's standing to recover the costs incurred in preserving the collateral for BDC. Geller relies on 11 U.S.C. § 506(c) which provides that, "the trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or

disposing of such property to the extent of any benefit to the holder of such claim," and argues that his right to recover such preservation costs are derivative of those of the Trustee.

BDC argues that a lessor has no standing to assert a Section 506(c) claim. Although some holdings limit recovery under § 506(c) to a trustee or debtor in possession, upon review of the relevant case law, only a handful of courts interpret § 506(c) so narrowly. *See, e.g., In re Interstate Motor Freight Systems IMFS, Inc.,* 71 B.R. 741 (Bankr.W.D.Mich.1987). The majority view, which we choose to follow, holds that "the better rule is to allow the claimant to directly apply for administrative expenses under 11 U.S.C. § 506(c) where the claimant can demonstrate that the debtor in possession or trustee will not proceed with the application itself." *In re DLS Industries, Inc.,* 71 B.R. 679, 681 (Bankr.D.Minn.1987); *In the Matter of Reda, Inc.,* 54 B.R. 871, 881 (Bankr.N.D.Ill. 1985); *In re Wyckoff,* 52 B.R. 164, 167 (Bankr.W.D.Mich.1985); *In re World Wines, Ltd.,* 77 B.R. 653, 658 (Bankr.N.D. Ill.1987) ("The better view is that a secured creditor who received a direct benefit from the rendition of services or provision of goods by an administrative claimant of the estate should have the collateral charged for such benefit ..." *Id.* at 658 n. 4 (citing 3 Collier on Bankruptcy ¶ 506.06 at 56)).

Here, the Trustee's abandonment of the collateral extinguished any interest the estate may have had in the personal property. As a result, we rule that Geller does have derivative standing to bring a direct claim against BDC for the costs incurred in preserving and storing the property in which BDC held a security interest.

3. Recovery Under § 506(c).

■ Having cleared the "standing" hurdle, Geller must next show, in order to recover under § 506(c), that the expenses incurred were: (1) necessary, (2) beneficial to the secured creditor, and (3) reasonable. *In the Matter of Trim–X, Inc.,* 695 F.2d 296, 299 (7th Cir.1982). In applying these

factors, the court in *In re World Wines, Ltd.,* 77 B.R. 653 (Bankr.N.D.Ill.1987) found that the lessor was entitled to use and occupancy reimbursement for storing the secured creditor's collateral. Similarly, in *In re Isaac Cohen Clothing Corp.,* 39 B.R. 199 (Bankr.S.D.N.Y.1984), the Bankruptcy Court held that where a secured creditor clearly benefited from storing its collateral on the lessor's premises, the lessor was entitled to recover use and occupancy from the creditor. In addition to supporting our conclusion that a lessor has standing under 506(c), the above cases also indicate that where a landlord preserves a secured creditor's collateral by providing storage, the landlord has conferred a necessary benefit to the holder of such collateral and is entitled to recover the reasonable value of said service.

On the facts before us, it is clear that once the Trustee abandoned the property, it became BDC's duty to either remove its collateral, or to assume the responsibility for its storage and preservation. Without question, the storage of BDC's collateral on the lessor's premises was both necessary and beneficial to BDC.

Finally, Geller contends that $1700 per week, which is the weekly rental agreed to by ICE in the lease, is also the reasonable cost for storing BDC's collateral. The general rule for determining use and occupancy under 506(c), is to charge the rental specified under the lease. *In re Proto–Specialties, Inc.,* 43 B.R. 81, 84 (Bankr.D.Ariz.1984); *In the Matter of Trim–X, Inc.,* 695 F.2d 296, 302 (7th Cir. 1982); *In re Wyckoff,* 52 B.R. 164, 168 (Bankr.W.D.Mich.1985). However, although not in a factually identical situation, the court in *In re Codesco, Inc.,* 18 B.R. 225, 229 (Bankr.S.D.N.Y.1982), in interpret-

ing § 506(c) held that "any recovery permitted from such property be measured not from the outlay but by the necessity and benefit involved...." *In re Codesco, supra,* at 229. Although $1700 per week is reasonable for the use of the premises as a restaurant/nightclub, BDC's use of the property was *solely* for storage, and to charge BDC for use and occupancy at the lease rate would be unreasonable, since it was not receiving the benefit of the highest and best use of the space. Instead, and acknowledging that such a determination is necessarily subjective, we find, based upon all of the evidence, that $1200 per week is a reasonable rate for the use and occupancy of the premises to store the personal property for the period in question. Although $1200 per week might at first appear high for storage space, that impression subsides when one considers that the personal property was spread out over the entire 30,000 square foot area, in a heated, insured and protected building, and that BDC thereby avoided the expense of removal (and storage somewhere else), which defendants conceded would have cost "several thousand" dollars.[3]

Accordingly, based on the entire record, BDC is ORDERED to pay the plaintiffs $22,800, for the use and occupancy of the premises from February 8, 1989, the date of abandonment by the Trustee, to June 20, 1989, the date of the auction.[4]

Enter Judgment accordingly.

---

3. In addition to the actual storage costs, the evidence indicates that BDC would have incurred additional expenses to disconnect and remove certain of the equipment. Considering the nature of the equipment, this would have been costly, and possibly not economically feasible.

4. On July 31, 1989, two months after the instant dispute was taken under advisement, BDC filed a document entitled "Supplemental Memorandum in Support of Objection of Business Devel-

opment Company of Rhode Island to the Motion of Jerome Geller dated April 24, 1989." In this "pleading," BDC alleges new facts and issues not raised during the May 15, 16 hearing, and not properly before this Court. Such allegations can only be considered if brought pursuant to a motion for further hearing or a motion to supplement the record, with an opportunity for hearing by interested parties. In its present posture, the supplemental memorandum must be and is rejected and stricken.