In re RADCO MERCHANDISING
SERVICES, INC., Debtor.

Luc and Shirley MATILLA, Plaintiffs,

v.

RADCO MERCHANDISING SERVICES,
INC., Marine Midland Business Credit
Corporation, Brandess Bros. Sales
Company, Inc., and Allied Movers, De-
fendants.

No. 89 C 6985.
Bankruptcy Nos. 87 B 7585, 88 A 92.

United States District Court,
N.D. Illinois, E.D.

Feb. 23, 1990.

Karen Walin, Towbin & Zazove, Ltd., Chicago, Ill., for plaintiffs.

Yerachmiel E. Weinstein, Chicago, Ill., for defendants.

## MEMORANDUM OPINION

BRIAN BARNETT DUFF, District Judge.

Luc and Shirley Matilla have appealed a final order of the bankruptcy court dismissing their claims in an adversary action against debtor Radco Merchandising Services, Inc.; Marine Midland Business Credit Corporation; Brandess Bros. Sales Company, Inc.; and Allied Movers. This court has jurisdiction over this appeal pursuant to 28 U.S.C. § 158(a) (1982).

The Matillas are owners of a warehouse and office property located in Los Angeles, California. Radco was once in the business of distributing photographic equipment to retailers; when it was still in business, it leased the Matillas' warehouse to store some of that equipment. One of Radco's creditors was Marine Midland, which had a security interest in Radco's inventory.

In May 1987, Radco filed for protection under Chapter 11 of the Bankruptcy Code, 11 U.S.C. §§ 1101 et seq. (1988). In July 1987 the bankruptcy court allowed Marine Midland to take a further security interest in the property located in the Los Angeles warehouse; shortly thereafter, the bankruptcy court gave Marine Midland permission to take possession of that property. Meanwhile, pursuant to *id.*, § 365(d)(4), and orders of the bankruptcy court, Radco had to choose whether to assume or reject its lease for the warehouse by October 21, 1987. The Matillas were skeptical that Radco would assume the lease, so while Radco was contemplating assumption, the Matillas allegedly searched for a new tenant.

During their search the Matillas allegedly came up with two candidates. One of these purportedly required possession of the warehouse no later than November 15, 1987, which worried the Matillas: how would Radco remove its assets from the warehouse in the few weeks between October 21 and November 15? The Matillas thus turned to the bankruptcy court, and asked it to compel Radco to make up its mind sometime before October 21. Radco didn't, and so when October 21 arrived, the bankruptcy court entered an order rejecting the lease. Aware of its earlier order allowing Marine Midland to take possession of the property stored in the warehouse, the bankruptcy court directed both Radco and Marine Midland "to remove any and all of their property from the Premises on or before November 8, 1987, and to thereupon surrender possession of the property" to the Matillas.

The Matillas allege that Radco and Marine Midland did not comply with the bankruptcy court's order. Instead, on November 3, 1987, Marine Midland foreclosed on Radco's property and sold it to Brandess. At this point Marine Midland claimed that *it* no longer had any property in the Matillas' warehouse; all of the property was Brandess's. As of November 8, 1987, the warehouse was still full, and the Matillas allegedly lost their prospective tenant. The Matillas thus removed the property [1] at their own expense on November 18, 1987.

The Matillas filed an adversary complaint against Radco, Marine Midland, Brandess, and Allied in February 1988. The bankruptcy court dismissed this complaint in November of that year; the Matillas amended their complaint in February 1989. Count 1 of this complaint alleged a claim for administrative expenses against Radco pursuant to 11 U.S.C. § 503(b)(1)(A). Count 2 was a claim against Marine Midland for the costs of maintaining Marine Midland's collateral, pursuant to *id.* at § 506(c). Count 3 was against all of the defendants, and sought civil sanctions for violation of the October 21, 1987 order of the bankruptcy court. On May 19, 1989, the bankruptcy court on its own initiative dismissed the Matillas' amended complaint for lack of subject-matter jurisdiction. The Matillas appeal this dismissal.

■■■ The bankruptcy courts have jurisdiction to hear and determine cases only "under title 11 and all core proceedings arising under title 11, or arising in a case under title 11, referred under [28 U.S.C. § 157(a) (1984 Supp.)]...." They may hear proceedings that are not "core proceedings" in cases related to a case under Title 11, but may not decide them without the consent of the parties. See *id.* at §§ 157(b)(1), 157(c). While the bankruptcy courts have jurisdiction to hear certain ancillary matters, see, for example, *Matter of Chicago, Rock Island and Pacific R. Co.*, 794 F.2d 1182, 1186–87 (7th Cir.1986) (bankruptcy court has jurisdiction of disputes pertinent to administration of assets of bankruptcy estate until assets leave estate), there has not yet developed a notion of "pendent" jurisdiction under Title 11. Accordingly, when a party presents a dispute to a bankruptcy court, that party bears the burden of establishing how that court has jurisdiction over each of the party's claims. See *Matter of Wood*, 825 F.2d 90, 97–98 (5th Cir.1987).

■■ The Matillas assert that the bankruptcy court had subject-matter jurisdiction over all of their claims. This court turns first to Count 1. Title 11 does allow an entity to recover "the actual, necessary costs and expenses of preserving the [bankruptcy] estate" from the estate itself. See 11 U.S.C. §§ 503(a), (b)(1)(A). A claim for administrative expenses is one of the core proceedings listed in 28 U.S.C. § 157(b)(2)(B), so at first glance one would have to say that the bankruptcy court erred in dismissing Count 1 for lack of jurisdiction. This is because of the principle enunciated in *Bell v. Hood*, 327 U.S. 678, 681–82, 66 S.Ct. 773, 775–76, 90 L.Ed. 939 (1946): "[W]here the complaint ... is

---

1. By this time, Brandess had sold some of the equipment to Allied; some of this equipment allegedly was still in the warehouse.

so drawn as to seek recovery directly under the Constitution or laws of the United States, the federal court . . . must entertain the suit."

First glances can be deceiving. The circumstances surrounding the Radco bankruptcy suggest that this court should give the bankruptcy court more credit for its decision. Even as the Matillas were in the early stages of their adversary case, the bankruptcy court was moving forward with the central proceedings on the Radco bankruptcy. The bankruptcy court converted the Radco matter from one under Chapter 11 to one under Chapter 7 in April 1988 for purposes of liquidating the Radco estate. By mid-June 1988 the interim trustee which the bankruptcy court had appointed to administer the estate reported to the court that Radco had no assets. The bankruptcy court issued its final order closing the case on April 14, 1989.

At the time the bankruptcy court dismissed the Matillas' action for lack of subject-matter jurisdiction, it knew that the Radco had no assets. The bankruptcy court thus could have concluded the Matillas' claims against Radco were frivolous or insubstantial. *Bell* itself suggests that the federal courts lack subject-matter jurisdiction over frivolous or insubstantial claims. See *id.* at 682–83, 66 S.Ct. at 776; see also *Hagans v. Levine*, 415 U.S. 528, 536–37, 94 S.Ct. 1372, 1378–79, 39 L.Ed.2d 577 (1974). The bankruptcy court thus acted properly in dismissing Count 1 for lack of subject-matter jurisdiction.

The Matillas fare better on Count 2 of their amended complaint. In that count, the Matillas sought to recover from Marine Midland under 11 U.S.C. § 506(c), which states: "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." Marine Midland contends that since the Matillas have directed Count 2 solely against it, and since Marine Midland could not turn against Radco were Marine Midland to lose to the Matillas (remember, Radco has no assets),

the bankruptcy court did not have jurisdiction.

■ Marine Midland's argument rests on the broad descriptions of jurisdiction found in *In re World Wines, Ltd.*, 77 B.R. 653, 655–56 (Bankr.N.D.Ill.1987), and *In re Crystal Mfg. & Packaging, Inc.*, 60 B.R. 816, 818 (N.D.Ill.1986), which have suggested that the bankruptcy courts lack jurisdiction where the matter does not affect the bankruptcy estate. These statements generally may be correct, but claims involving 11 U.S.C. § 506(c) present an exception. Section 506(c) contains a unique feature among the bankruptcy provisions: a focus not on the property of the bankruptcy estate, or on property to which the estate is entitled, but rather on property securing "allowed secured claims." A claim for the expenses of preserving or disposing of such property chases that property—and perhaps even the secured creditor—until the claim is satisfied. See *Matter of Trim-X, Inc.*, 695 F.2d 296, 298–99, 301 (7th Cir.1982) (noting exceptional nature of § 506(c)). Indeed, at the same time that the bankruptcy court in *World Wines* was saying how limited its jurisdiction was, it had no trouble allowing a third party to present its claims against a bank for storing property of a debtor which secured that bank, prior to the bank foreclosing on the property. See *World Wines*, 77 B.R. at 656.

There are counter-arguments to the position taken in *World Wines*, and problems with applying it squarely to this case. For example, Section 506(c) states that the *trustee* may recover expenses for administering the property; it does not mention a right of action by other parties. This did not bother the *World Wines* court, which allowed the debtor's landlord to sue the debtor's secured creditor. See also *In re McKeesport Steel Casings Co.*, 799 F.2d 91 (3d Cir.1986) (utility company had standing to recover from two secured creditors of debtor under § 506(c)); *In re International Club Enterprises, Inc.*, 105 B.R. 190, 193 (Bankr.R.I.1989) (noting majority rule that third party may seek expenses under § 506(c) when debtor or trustee will not).

One could also question who is the proper defendant: the present holder of the property or the secured creditor? See *In re Golden Plan of California, Inc.*, 829 F.2d 705, 712–13 (9th Cir.1986) (text of § 506(c) allows recovery only against holder of allowed secured claim).

This court need not reach these issues, as they were not presented below nor argued here. What is clear is that the Matillas present an arguable claim in Count 2 against Marine Midland, arising under Title 11; under the principles examined earlier in this opinion, this gives the bankruptcy court at least enough jurisdiction to determine if this is a core or a non-core proceeding under Title 11, and how to advance from there.

There remains Count 3, the Matillas' claims for sanctions for violation of the bankruptcy court's October 21, 1987 order. The defendants[2] first challenge the way the Matillas have sought to enforce that order, claiming that they should have moved for contempt of court. While one way to enforce an order of the court is to move for a finding of contempt of court before the court which issued the order, there are other ways of alerting the court to an alleged violation of one of its orders. See generally Charles Alan Wright and Arthur R. Miller, 11 Federal Practice and Procedure § 2960 (West 1973). Enforcement of an order of the bankruptcy court is an equitable matter, and may be sought by means of an adversary proceeding. See Bankruptcy Rule 7001.

■ One of the parties, Marine Midland, next contends that the bankruptcy court lacked power to enter the October 21, 1987 order, and thus the Matillas may not enforce it. The Matillas contend that this court should not listen to this argument, as Marine Midland waived whatever right it had to attack the order by never appealing it. Not only did Marine Midland not appeal the order within ten days of its issuance—

something which it could have done, since it was a final order of the bankruptcy court—it also did not appeal the order upon the closing of the Radco bankruptcy case in April 1989. See *Matter of Kilgus*, 811 F.2d 1112, 1116–17 (7th Cir.1987) (party may appeal final orders of bankruptcy court both after initial issuance of order and after entry of judgment order pursuant to Bankr.R. 9021; only latter time for appeal is mandatory for purposes of res judicata).

Since Marine Midland chose not to appeal the October 21, 1987 order in proper fashion, it may not attack it now. See discussion in Wright and Miller, 11 Federal Practice and Procedure § 2960. This court thus must treat the order as valid with respect to Marine Midland, and assume its validity with respect to Brandess and Allied since they have not challenged the order.[3] The Matillas claim that since the order was valid, the bankruptcy court had jurisdiction and power to enforce it, pursuant to 11 U.S.C. § 105(a). That section provides: "The bankruptcy court may issue any order, process, or judgment that is necessary or appropriate to carry out the provisions of this title."

■ The bankruptcy court issued its October 1987 order pursuant to *id.* at § 365(d)(4). That section allows the bankruptcy court to terminate a lease for nonresidential property and order the trustee (or, by virtue of *id.* at § 1107, the debtor) to surrender the premises to the lessor. Since this court must treat the bankruptcy court's original order as valid, this court must presume that the bankruptcy court believed that an order directing both the debtor, Radco, and a third party, Marine Midland, to vacate the Matillas' warehouse was necessary to achieve surrender of the warehouse to the Matillas pursuant to § 365(d)(4). Section 105(a) gave the bankruptcy court the power to issue this order.

---

**2.** Only Marine Midland and Brandess have filed briefs in support of the bankruptcy court's decision.

**3.** For this reason, the court need not decide whether the lack of an appeal of the order after

the closing of the Radco bankruptcy case prevents Brandess and Allied from challenging that order. The court questions, however, whether they could have appealed the order as mere bystanders to the Radco proceedings.

Section 105(a) also gives the bankruptcy court the power and the jurisdiction to enforce its valid orders. The bankruptcy court thus erred in dismissing Count 3 for lack of subject-matter jurisdiction, and for that reason this court will vacate and remand the bankruptcy court's dismissal of Count 3[48] along with Count 2. That the bankruptcy court has power to enforce its order does not mean that it must do so, however. Like a court of equity, the bankruptcy court has the power to amend, modify, or vacate its earlier orders. Perhaps that is what the bankruptcy court intended to do in this case, perhaps after realizing that it may have lacked authority under § 365(d)(4) to order parties other than Radco to vacate the warehouse. The bankruptcy court also had the power to tailor remedies for violations of its orders to the underlying purposes of the order. Perhaps having understood that Radco no longer has assets and that Marine Midland no longer owned the property at the warehouse as of November 15, 1987, the bankruptcy court felt that sanctioning the defendants was inappropriate.

The questions surrounding the bankruptcy court's power to amend or vacate its October 1987 order are not presented to the court on this appeal. This court leaves them to the sound discretion of the bankruptcy court on remand. All that need be said is that the bankruptcy court has jurisdiction to entertain further proceedings on Counts 2–3 of the Matillas' amended complaint. The decision of the bankruptcy court is AFFIRMED in part, and VACATED and REMANDED in part.