**In the Matter of DELTA TOWERS, LTD., d/b/a Ramada Hotel Orleans, La., a Limited Partnership, Debtor.**

**NEW ORLEANS PUBLIC SERVICE, INC., Appellee, Cross–Appellant,**

**v.**

**FIRST FEDERAL SAVINGS AND LOAN ASSOCIATION OF WARNER ROBINS, GEORGIA, Appellant, Cross–Appellee.**

**No. 90–3341.**

United States Court of Appeals, Fifth Circuit.

Feb. 15, 1991.

Sidney A. Cotlar, Herman, Herman, Katz & Cotlar, New Orleans, La., for appellant, cross-appellee.

Linton Carney, Gilbert L. Hamberg, Richard W. Bussoff, Monroe & Lemann, New Orleans, La., for appellee, cross-appellant.

Before JOHNSON, WILLIAMS and HIGGINBOTHAM, Circuit Judges.

JOHNSON, Circuit Judge:

New Orleans Public Service, Inc. ("NOPSI") instituted this adversary proceeding in the bankruptcy court to recover utility fees from a secured creditor of the debtor, Delta Towers, Ltd. ("Delta"). The bankruptcy court denied NOPSI the relief requested. On appeal, the district court reversed on the ground that 11 U.S.C. § 506(c) permitted NOPSI to recover the fees as administrative expenses. For the reasons set forth below, this Court affirms in part and reverses in part the district court's judgment.

## I. FACTS AND PROCEDURAL HISTORY

Delta was a limited partnership whose primary asset was a multi-story building located in New Orleans, Louisiana. Delta purchased the building in 1982, financing the purchase in part with a loan provided by First Federal Savings and Loan Association of Warner Robins, Georgia ("First Federal"). To secure the loan, First Federal received a collateral mortgage on the building. Delta eventually defaulted on the loan, and First Federal filed a petition to foreclose. Subsequently, Delta filed a Voluntary Petition under Chapter 11 of the Bankruptcy Code.

From 1983 until 1986, Delta used the building to operate a hotel. Throughout the years of Delta's operation, NOPSI provided gas and electric service to the hotel. Although the account was past due, NOPSI continued to provide utilities to the hotel after Delta filed for bankruptcy. The hotel ceased operations in November 1988, and NOPSI terminated services immediately thereafter.

Upon application by NOPSI, the bankruptcy court issued the following orders: (1) NOPSI would recover the amount of $406,131.51, representing utility services provided to the hotel from May 14, 1985, the day Delta filed bankruptcy, until July 31, 1986; (2) these post-petition expenses would be recognized as a priority administrative claim under 11 U.S.C. §§ 503 and 507; and (3) NOPSI could obtain adequate assurance of payment in the form of a $150,000.00 security deposit pursuant to 11 U.S.C. § 366. Despite the bankruptcy court's approval of NOPSI's application, NOPSI filed a complaint in the bankruptcy court on September 15, 1987. This complaint forms the basis of the instant appeal.

In the complaint, NOPSI asserted three claims in order to recover pre- and post-petition utility fees: (1) NOPSI requested that the bankruptcy court designate the post-petition utility charges as "administrative expenses" under 11 U.S.C. § 506(c) to

allow NOPSI to recover the charges from secured creditors or the collateral itself; (2) NOPSI sought to recover pre- and post-petition charges under the common fund doctrine; and (3) NOPSI sought to recover pre- and post-petition charges under certain provisions of the Louisiana Code of Civil Procedure. After an evidentiary trial, the bankruptcy court denied relief on all three claims. The bankruptcy court explained that the post-petition charges could not be construed as an administrative expense under § 506(c) where NOPSI failed to prove that the services resulted in a quantifiable direct benefit to First Federal and NOPSI failed to obtain a security deposit as permitted under § 366. NOPSI did not prevail under the common fund doctrine because the bankruptcy court determined that the theory was not significantly distinguishable from § 506(c). Finally, the bankruptcy court abstained from deciding the state law claim, noting that a state court proceeding on the matter was still pending.

NOPSI appealed to the district court. The district court agreed with the bankruptcy court's decision denying recovery under the common fund doctrine and the Louisiana Code of Civil Procedure. However, the district court reversed on the denial of NOPSI's § 506(c) claim, concluding that First Federal had benefitted from NOPSI's provision of utility services to the hotel and that the failure to obtain a security deposit did not preclude recovery under § 506(c). 112 B.R. 811. Thus, the district court ordered that the case be remanded to the bankruptcy court for a determination of the amount of administrative expenses.

Both First Federal and NOPSI appealed the district court's judgment.

## II. DISCUSSION

■ Findings of fact made by a bankruptcy court will not be set aside unless clearly erroneous. In other words, this Court will reverse only "when[,] although there is evidence to support it, the reviewing court on the entire evidence is left with a firm and definite conviction that a mistake has been committed." *In re Missionary Baptist Foundation, Inc.*, 712 F.2d 206, 209 (5th Cir.1983) (quoting *United States v. United States Gypsum Co.*, 333 U.S. 364, 395, 68 S.Ct. 525, 541, 92 L.Ed. 746 (1948)). Conclusions of law, conversely, are subject to plenary review on appeal. *Id.*

### A. Section 506(c)

■ Generally, administrative expenses, such as the utility fees here, are satisfied out of the bankruptcy estate. *In re Trim-X, Inc.*, 695 F.2d 296, 301 (7th Cir.1982). The Bankruptcy Code furnishes an exception to the general rule in § 506(c), which provides that a "trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." In order to charge a secured creditor with administrative expenses under § 506(c), three elements must be shown: (1) the expenditure was necessary, (2) the amounts expended were reasonable, and (3) the creditor benefitted from the expenses. *In re Trim-X, Inc.*, 695 F.2d at 299. The burden of demonstrating these elements is on the party seeking recovery. *See In re Flagstaff Foodservice Corp.*, 739 F.2d 73, 77 (2d Cir. 1984) (*"Flagstaff I"*); *Brookfield Production Credit Ass'n v. Borron*, 738 F.2d 951, 952 (8th Cir.1984).

#### 1. Standing

■ First Federal argues that NOPSI lacks standing to invoke § 506(c) as that section provides that "the trustee" may recover from the collateral. Despite the seemingly unambiguous language, courts have allowed a claimant to use § 506(c) if the trustee or debtor-in-possession refuses to pursue a claim of administrative expenses. *See, e.g., In re McKeesport Steel Castings Co.*, 799 F.2d 91, 94 (3d Cir.1986); *In re International Club Enterprises, Inc.*, 105 B.R. 190, 193 (Bkrtcy.D.R.I.1989); *In re World Wines, Ltd.*, 77 B.R. 653, 658 n. 4 (Bkrtcy.N.D.Ill.1987); *see also* 3 Collier on Bankruptcy, ¶ 506.06, at 506–58 n. 7a (15th ed. 1990) (asserting that the better position is to allow a claimant to recover

the costs for its services under § 506(c)). *Contra In re Ramaker*, 117 B.R. 959, 967 (Bkrtcy.N.D.Iowa 1990); *In re Interstate Motor Freight System IMFS, Inc.*, 71 B.R. 741, 745 (Bkrtcy.W.D.Mich.1987). "A contrary position may result in a windfall benefit to the secured creditor to the detriment of a third party." *In re So Good South Potato Chip Co.*, 116 B.R. 144, 146 (Bkrtcy.E.D.Mo.1990). This Court agrees with the position that the advantages of § 506(c) are not limited to trustees. Thus, NOPSI has standing to use § 506(c), considering that the bankruptcy court noted the debtor-in-possession's refusal to seek recovery of NOPSI's utility fees.

**2. Direct Benefit**

■ First Federal has stipulated that the utility expenses were necessary and reasonable. The only relevant issue, then, is the last element of the test regarding a benefit to the creditor. Courts have construed the benefit element as requiring that the claimant incur the expenses primarily for the benefit of the secured creditor and that the expenses resulted in a quantifiable direct benefit to the secured creditor. *In re Cascade Hydraulics & Utility Service, Inc.*, 815 F.2d 546, 548 (9th Cir.1987); *Brookfield Production*, 738 F.2d at 952; *In re Beker Industries Corp.*, 89 B.R. 336, 342 (S.D.N.Y.1988). Indirect or speculative benefits are insufficient. *In re Flagstaff Foodservice Corp.*, 762 F.2d 10, 12 (2d Cir.1985) (*"Flagstaff II"*). At the same time, expenses which benefit the debtor or other creditors rather than the secured creditor himself are immaterial. *Flagstaff I*, 739 F.2d at 76.

The bankruptcy court found that NOPSI had not shown a quantifiable direct benefit to First Federal. While the utilities served to benefit the operation of the hotel, there was no separate preservation of the building or the movables within. Significantly, First Federal was simply the holder of a security interest in the building and the movables, but had no interest in the operation. The bankruptcy court asserted that any incidental effect that the utilities had on maintaining the building and movables

amounted merely to an indirect benefit to First Federal.

On appeal, the district court reversed the bankruptcy court's finding of no direct benefit to First Federal. The district court explained that "the bankruptcy court's interpretation of benefit was too strict in light of analogous case law." The district court cited two cases to support its construction of analogous case law—*In re Kotter*, 59 B.R. 266 (Bkrtcy.C.D.Ill.1986), and *In re McKeesport*, 799 F.2d 91 (3d Cir.1986). Despite the district court's assertion, the bankruptcy court's analysis is not erroneous in light of those cases. This is especially true since a determination of whether expenses meet the requirements of § 506(c) depends upon the facts of the particular case.

The court in *In re Kotter* allowed the Chapter 11 debtor to recover under § 506(c) from a secured creditor holding a security interest in hogs for utility expenses incurred to operate hog confinement facilities. 59 B.R. at 272. The case is sufficiently distinguishable on its facts from the instant case since the hog confinement facilities could not have been operated without the utilities and the operation benefitted the creditor by increasing the size of the herd, *i.e.*, the creditor's collateral. Likewise, *In re McKeesport* is distinguishable. In that case, a utility company recovered post-petition gas expenses under § 506(c) because the court found that the utilities preserved the going concern value of the debtor's estate. 799 F.2d at 94. The *McKeesport* secured creditors benefitted when the property was sold at a higher price as a going concern. In the instant case, on the other hand, the bankruptcy court found that Delta's building had no value whatsoever as a going concern.

Though the bankruptcy court found no direct benefit to NOPSI, the district court determined that NOPSI's provision of utilities benefitted First Federal in two ways: (1) the utilities prevented deterioration of the building and the movables within and (2) the utilities maintained the going concern value of the hotel. As a result of its findings, the district court ordered that

NOPSI's claim for post-petition services be charged to the secured creditors pursuant to § 506(c). Since the determinations of whether the utilities prevented deterioration or maintained the going concern value are findings of fact, the district court was not justified in imposing its own findings of fact unless the bankruptcy court's findings were clearly erroneous. The district court never expressly asserted that the bankruptcy court's findings were clearly erroneous, nor does the record reflect such error. Rather, the district court merely reweighed the evidence. Indeed, there is evidence to support the district court's findings, but the district court does not enjoy absolute freedom to make its own findings.

After reviewing the record, this Court is unable to conclude that the bankruptcy court's findings were clearly erroneous on the questions of deterioration and going concern value. As for deterioration, the bankruptcy court indicated there was evidence that the building would deteriorate without utility service, but there was no evidence of how much deterioration would occur. First Federal never requested or consented to the provision of utility services by NOPSI. In fact, soon after Delta defaulted on its loan, First Federal sought to foreclose on the building and has never changed its position advocating that the State of Louisiana should carry through with the foreclosure sale. Thus, there was no evidence of the quantifiable direct benefit to First Federal for the utilities provided; consequently, NOPSI failed in establishing its burden of proof. Moreover, the district court acknowledged the lack of proof of quantifiable benefit when it remanded for a determination on this same question.

Next, the bankruptcy court found no evidence of the difference between the value of the preservation of the property as a going concern and the liquidation value. This finding was not so clearly erroneous that the district court was justified in reversing it. The hotel had not been operated since 1988 and had no going concern value. Hence, First Federal has not benefited by the operation of the hotel as a going concern.

### 3. Security Deposit

Pursuant to § 366 of the Bankruptcy Code, a utility company may obtain a security deposit to assure payment of utility fees. In the instant case, NOPSI did not seek such protection until after Delta filed Chapter 11. The bankruptcy court noted that this provided another reason to reject NOPSI's claim for administrative expenses. Because NOPSI failed to take advantage of the protections provided by § 366, the bankruptcy court ruled that NOPSI was estopped from seeking the costs of utility expenses as administrative expenses under § 506(c). The district court disagreed with the bankruptcy court's interpretation of the interaction between § 366 and § 506(c). In this regard, the district court was correct.

Section 366 provides a utility company the opportunity to obtain protection in the form of a security deposit. The Bankruptcy Code does not expressly require a utility company to seek such protection as a prerequisite to recovering administrative expenses. Indeed, there is no authority in the Code or in case law to the effect that failing to take this option precludes NOPSI from invoking § 506(c). This Court finds no reason to create such a rule in this case.

### B. *Common Fund Doctrine*

The common fund doctrine is an equitable principle in federal law which requires a prevailing party to pay expenses necessary to preserve property subject to litigation. *See New York Dock Co. v. The Poznan,* 274 U.S. 117, 121, 47 S.Ct. 482, 484, 71 L.Ed. 955 (1927). The district court affirmed the bankruptcy court's ruling that the doctrine was not significantly distinguishable from § 506(c) and therefore provided no independent ground of recovery for NOPSI. There is some question whether the common fund doctrine remains a viable independent source of recovery in light of the enactment of the Bankruptcy Code with its equitable principles. *See* 3 Collier on Bankruptcy, ¶ 506.06, at 506–56 (15th ed. 1990). Nonetheless, this Court's only application of the common fund doc-

trine to a bankruptcy proceeding was limited to a case in which exceptional circumstances were present. *In re Triangle Chemicals, Inc.*, 697 F.2d 1280, 1289 (5th Cir.1983). Since §§ 366 and 506(c) provide sufficient means for NOPSI to obtain its fees for utilities, the circumstances do not justify the use of equitable principles. Thus, the district court did not err in denying recovery to NOPSI under the common fund doctrine.

### C. State Law Claims

■ On an alternative ground, NOPSI sought to recover under certain articles of the Louisiana Code of Civil Procedure. The bankruptcy court declined to consider the independent state law claims because resolution of those claims was currently pending in state court proceedings. NOPSI argues that *United Mine Workers v. Gibbs*, 383 U.S. 715, 725, 86 S.Ct. 1130, 1138, 16 L.Ed.2d 218 (1966), permits a federal court to exercise pendent jurisdiction over state law claims which arise from the same nucleus of operative fact as the federal claims. While it may have been permissible for the bankruptcy court to have ruled on NOPSI's state law claims, 28 U.S.C. § 1334(c)(1) accords a court the discretion to abstain from hearing state law claims. This Court finds no abuse of discretion in the decision to abstain.

### D. Expert Testimony

■ During the trial, the bankruptcy court refused to recognize one of NOPSI's witnesses as an expert on the costs of closing, preserving and reopening a hotel.[1] Federal Rule of Evidence 702 provides that a witness may qualify as an expert based on the witness' "knowledge, skill, experience, training, or education." A reviewing court allows the trial court the widest possible discretion in deciding whether a witness qualifies as an expert because the trial court is in the best position to determine the expertise of the witness and the helpfulness of the testimony. *Dixon v. Int'l Harvester Co.*, 754 F.2d 573, 580 (5th Cir.1985). Upon a study of the record, this Court fails to discern any abuse of discretion in the bankruptcy court's refusal to recognize the witness' purported expertise on the costs of closing, preserving and reopening a hotel.

### III. CONCLUSION

This Court interprets § 506(c) of the Bankruptcy Code to permit a third party claimant from seeking recovery of administrative expenses. The bankruptcy court's finding that NOPSI failed to show that First Federal received a quantifiable direct benefit from the utilities provided by NOPSI to First Federal's collateral was not clearly erroneous. Therefore, the district court erred in reversing the bankruptcy court's judgment that NOPSI could not recover utility expenses under § 506(c). The district court did not err in affirming the ruling that the NOPSI's failure to take advantage of § 366 precluded recovery under § 506(c). Further, the district court did not err in affirming the bankruptcy court's denial of any recovery under the common fund doctrine or under an independent state law theory. For these reasons, the district court's judgment is affirmed in part and reversed in part.

AFFIRMED in part, REVERSED in part.

---

1. The district court did not address this issue.