UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellant/Cross–Appellee,

v.

THE MERCHANTS BANK,
Appellee/Cross–
Appellant.

No. 91–1108–CV–W–1.

United States District Court,
W.D. Missouri, W.D.

April 24, 1992.

Carolyn Jones, U.S. Dept. of Justice, Spec. Litigation, Tax Div., Washington, D.C., for plaintiff.

Joe Coleman, McDowell, Rice & Smith, Kansas City, Mo., for defendant.

## ORDER

WHIPPLE, District Judge.

This matter is before the Court on cross appeals from the United States Bankruptcy Court for the Western District of Missouri.[1] For the following reasons, the judgment of the bankruptcy court is affirmed.

### Procedural Background

Missouri OHM, Inc. filed its Chapter 11 petition on January 25, 1989. At that time, The Merchants Bank ("Merchants") held a secured claim in the amount of $3,956,423.34 plus accrued interest. The United States of America, Internal Revenue Service ("IRS") held a secured claim for federal taxes in the amount of $769,741.35.

On February 1, 1989, an emergency hearing was held at which the bankruptcy court approved a $100,000 loan to Missouri OHM, Inc. from Merchants to pay operating costs in order to keep them operating. Merchants was granted a superpriority lien under 11 U.S.C., § 364(d). The bankruptcy court approved similar advances between March and July, 1989. After Missouri OHM, Inc. filed its schedules, it was determined that the IRS held first priority in assets acquired by Missouri OHM, Inc. after the first Notice of Federal Tax Lien had been filed in Jackson County on November 23, 1987. As a result, Merchants agreed to reductions in its superpriority lien in the amounts of $70,000 and $22,346. A net amount of $134,154 is due to Merchants with respect to its superpriority lien.

During the course of the bankruptcy proceedings, Missouri OHM, Inc. attempted to sell its stores as going concerns. The sale of its 21 Nebraska stores for $918,000 was approved by the bankruptcy court on March 30, 1989. On April 27, 1989, Steven C. Block was appointed Chapter 11 Trustee, and continued to sell the stores as going concerns.

On October 6, 1989, the IRS filed an administrative claim on behalf of IRS for withholding and FICA taxes due by Missouri OHM, Inc. for the first and second quarters of 1989. These amounts represented unpaid employment taxes incurred between the date of the filing of the bankruptcy petition (January 25, 1989) and the date of the appointment of the trustee (April 27, 1989).

On February 13, 1990, this case was converted to a Chapter 7. On or about December 21, 1990, Merchants filed a Motion for Trustee's Accounting, Order Authorizing Disbursement of Funds, Setting Time for Filing Objections and Setting Hearing on Objections, If Filed. On January 15, 1991, the Trustee responded, stating that he had cash on hand in the amount of $66,490.47. He proposed to pay administrative claims in the amount of $14,575.38 and $51,915.09 to Merchants on its superpriority claim.

In its order dated January 16, 1991, the bankruptcy court sustained the IRS's oral objection to the proposed distribution of assets by the Trustee. The bankruptcy court also allowed the claim of the IRS for withholding and FICA taxes for the first and second quarters of 1989 as an administrative expense, to be paid pro rata with other administrative expenses. The bankruptcy court further found that the administrative expense of the IRS should be paid prior to Merchant's superpriority claims. On January 25, 1991 Merchants filed its Motion for Reconsideration.

The bankruptcy court held a hearing on the Motion for Reconsideration on April 9, 1991. After the hearing, the bankruptcy

---

1. The Honorable Karen M. See.

court entered an order on April 23, 1991 vacating its order of January 16, 1991 allowing the IRS administrative claim and ordered that a hearing be held on the Motion of the Bank for Trustee's Accounting and Order Authorizing Disbursements of Funds and any request of the IRS for allowance of an administrative claim.

The IRS filed an amended administrative claim on July 10, 1991, reflecting that it was due employment taxes in the amount of $29,485.50, interest in the amount of $7,051.05 and penalties in the amount of $9,996.05, plus accrued interest and penalties. The IRS then filed its Motion for Allowance and Payment of Administrative Expenses on July 19, 1991.

The bankruptcy court held another hearing on July 23, 1991. The bankruptcy court found that the tax portion of the Government's administrative claim in the amount of $29,495.50 was properly chargeable against Merchant's collateral under 11 U.S.C. § 506(c), as the taxes which were incurred by the Chapter 11 estate post-petition were either (1) incurred at Merchants' instance and request; or (2) impliedly consented to; and (3) Merchants consented that certain of its superpriority liens for its post-petition lending were subordinate to such expenses. The bankruptcy court also found that interest and penalties claimed by the IRS as part of its administrative claim did nothing to preserve or benefit Merchants' collateral, as Merchants did not actually or impliedly consent to the incurrence thereof and, as to Merchants, the interest and penalties were not reasonable, and would not be paid out of Merchants' collateral to the IRS.

On October 18, 1991, the IRS filed a timely Notice of Appeal. On October 28, 1991, Merchants filed a Notice of Cross Appeal.

As grounds for its appeal to this Court, the IRS asserts the bankruptcy court erred in denying interest and penalties on the administrative expense claim of the IRS.

In its cross appeal, Merchants Bank asserts the bankruptcy court erred in:

(1) ruling that the IRS had standing to raise claims in the bankruptcy estate under 11 U.S.C. § 506(c) to recover from the collateral of Merchants;

(2) ruling that the claims of the IRS were recoverable under 11 U.S.C. § 506(c); and

(3) in allowing the claims of the IRS under 11 U.S.C. § 503(b).

The Court herein addresses in turn each of the grounds asserted by Merchants before turning to the grounds asserted by the IRS in its appeal.

### Cross–Appeal by Merchants

■ Initially, Merchants argues that the bankruptcy court erred in conferring standing on the IRS to assert its claims for administrative expenses under 11 U.S.C. § 506(c). Section 506(c) provides:

The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim.

Merchants reasons that Section 506(c), by its clear terms limits the recovery of administrative claims to the trustee. Therefore, Merchant argues, the IRS as an individual creditor, cannot invoke Section 506(c) in order to satisfy its claims.

The IRS concedes that some courts have indeed expressed the view that a creditor does not have standing under Section 506(c). *In re Interstate Motor Freight System, IMFS, Inc.*, 71 B.R. 741, 746 (B.C.W.D.Mich.1987) ("[A]n action under Section 506(c) is vested solely in the trustee or a debtor in possession."); *In re J.R. Research, Inc.*, 65 B.R. 747, 750 (B.C.D.C.Utah 1986) ("The duly appointed and authorized trustee, as custodian of the estate property, is the only party with standing to assert a Section 506(c) claim...."); *In re Codesco, Inc.*, 18 B.R. 225, 230 (B.C.S.D.N.Y.1982) ("There is nothing in Code Section 506(c) that creates an independent cause of action in favor of the debtor's attorneys against the holders of secured claims or their collateral.")

Notwithstanding the above cited authority, the IRS asserts there is abundant au-

thority for the proposition that a creditor does have standing under Section 506(c). The IRS argues that to deny standing would fly in the face of the equitable nature of Section 506(c) by giving a windfall to the secured creditor. This view is supported by *In re Scopetta–Senra Partnership III*, 129 B.R. 700 (B.C.S.D.Fla.1991) The court in *Scopetta–Senra* reasoned that a *Chapter 7* trustee would have no interest in asserting an administrative claim for a *Chapter 11* administrative expense. Likewise, the court reasoned, in a Chapter 11 setting, the debtor in possession would no longer be in existence and would have no interest in asserting the administrative claim. Because the interests of the administrative claimant would not be represented otherwise, the court allowed the claimant to assert the administrative claim in order to avoid a windfall to a secured creditor at the expense of the administrative claimant. The court found such a windfall to any secured creditor that directly benefited from the incurrence of the administrative claim to be clearly contrary to the equitable nature of Section 506(c). *Id.* at 701. *Accord In re Delta Towers, Ltd.*, 924 F.2d 74, 76–77 (5th Cir.1991); *In re McKeesport Steel Castings Co.*, 799 F.2d 91, 94 (3d Cir.1986); *In re International Club Enterprises, Inc.*, 105 B.R. 190, 193 (B.C.D.C.R.I.1989); *In re World Wines, Ltd.*, 77 B.R. 653, 658 n. 4 (B.C.N.D.Ill. 1987); *See also*, 3 Collier on Bankruptcy, ¶ 506.06 at 506–58 n. 7a (15th ed. 1990) (asserting that the better position is to allow an administrative claimant to assert its claim under § 506(c)).

The circumstances in the case at bar are closely akin to those presented in *Scopetta–Senra*. The IRS claim in the Chapter 7 proceedings consists of Chapter 11 administrative expenses. The bankruptcy court properly avoided the inequitable scenario described in *Scopetta–Senra* by allowing the IRS to assert its administrative claim. To have done otherwise would have resulted in a windfall to the secured creditor Merchants to the detriment of the IRS. *In re So Good South Potato Chip Co.*, 116 B.R. 144, 146 (B.C. E.D.Mo.1990).

Merchants next asserts that the bankruptcy court erred in finding that the administrative claim of the IRS was recoverable out of Merchants' collateral under Section 506(b).

In order to recover its administrative claim under Section 506(c) the IRS must show that the incurrence of the administrative expense was necessary, reasonable and beneficial to Merchants. *In re Bob Grissett Golf Shoppes, Inc.*, 50 B.R. 598, 602 (B.C.E.D.Va.1985). "While the ... applicant has the burden of proving the necessity, reasonableness and benefit to the secured creditor of all expenses to be paid from the creditor's collateral, it is incumbent upon the Court to make affirmative findings concerning these elements before authorizing a charge against the collateral." *Id.*

In the instant case the bankruptcy court found that Merchants directly benefitted from the incurrence of the post petition employment tax liability by virtue of the fact that such liability preserved some of the going concern value of Merchants' collateral. This Court agrees with the conclusion of the bankruptcy court in this regard. Clearly, Merchants stood to realize significantly more gain from the sale of its collateral as a going concern rather than as a liquidation of assets. The recognition of this fact by Merchants is evident from the Merchants' agreement to subordinate its post-petition superpriority liens to legitimate administrative expenses of the bankruptcy estate.

In *In re Annett Ford, Inc.*, 64 B.R. 946, 947 (D.Neb.1986), the court held that where a secured creditor agrees to the continued operation of a business for the purpose of increasing the ultimate gain in the event of a reorganization or liquidation, the necessary administrative expenses, including taxes, incurred during the continued operation directly benefitted the creditor and were thus recoverable under Section 506(c). Such a case is indistinguishable from the case at bar. In the instant case, the bankruptcy court did not err in allowing recovery of the employment tax claim under Section 506(c).

Finally, Merchants contends that the bankruptcy court erred in allowing re-

covery of the administrative claim of the IRS under 11 U.S.C. § 503(b). Merchants argues that the IRS failed to meet its burden of proof under Section 503(b) inasmuch as no evidence was presented to the bankruptcy court regarding the administrative expense claims.

Section 503(b) provides that "[a]fter notice and a hearing," administrative expenses, including any tax incurred by the estate (except those taxes specified in 507(a)(7) shall be allowed). 11 U.S.C. § 503(b)(1)(B). 11 U.S.C. § 102(1)(A) defines "after notice and a hearing" as "after such notice as is appropriate in the particular circumstances, and such opportunity for a hearing as is appropriate in the particular circumstances."

In the instant case, the bankruptcy court held a hearing on July 23, 1991 during which the IRS's Motion for Allowance and Payment of Administrative Expenses was considered. At the hearing, counsel for the IRS stated to the court that the amount of the administrative claim was ascertained from amounts set forth on tax returns and amended tax returns submitted by the trustee. Although the IRS offered to have the trustee testify regarding the amount of the administrative claim, no testimony in this regard was presented during the hearing. Merchants raised no objection with respect to the amount of the IRS administrative claim at that time. Furthermore, since that time, Merchants has never raised any specific objection to the amount of the IRS claim, except to assert that the IRS has failed to carry their burden under 503(b). There is no reason for this court to conclude that the July 23, 1991 hearing did not met the hearing and notice requirement set forth in Section 102(1)(A). Accordingly, the bankruptcy court did not err in allowing the claim of the IRS under Section 503(b).

### Appeal by the IRS

■ In its appeal to this Court, the IRS asserts that the bankruptcy court erred in disallowing the interest and penalties portion of its administrative claim under 11 U.S.C. § 506(c). The IRS argues that the interest and penalties are an integral part of the taxes which are allowable under 506(c).

In an effort to lend support of its contentions that interest and penalties should be awarded under Section 506(c) through analogy, the IRS cites to a wealth of authority indicating that such expenses constitute valid administrative claims under Section 503(b). *In re Flo–Lizer, Inc.,* 916 F.2d 363 (6th Cir.1990); *In re Allied Mechanical Services, Inc.,* 885 F.2d 837 (11th Cir.1989); *In re Mark Anthony Construction, Inc.,* 886 F.2d 1101 (9th Cir.1989); *United States v. Friendship College, Inc.,* 737 F.2d 430 (4th Cir.1984); *In re Mall Food Services Corp.,* 75 B.R. 639 (B.C.E.D.Mo.1987).

While interest and penalties on a tax assessment may indeed be allowable administrative claims under Section 503(b), it does not necessarily follow that such interest and penalties should be charged against the collateral of a secured creditor under Section 506(c). As stated earlier, Section 506(c) is equitable in nature. Clearly, its purpose is to achieve equity by charging a secured creditor's collateral with the administrative costs expended to preserve that collateral. Thus arises the requirement that in order to allow an administrative claim against a secured creditor's collateral, the expenditure underlying the administrative claim must have directly benefited the secured creditor. *Brookfield Production Credit Assn v. Borron,* 738 F.2d 951, 952 (8th Cir.1984); *In re Flagstaff Foodservice Corp.,* 762 F.2d 10, 12 (2d Cir. 1985).

■ In the case at bar, while the bankruptcy court found that the incurrence of the employment tax liability directly benefitted Merchants by increasing the value of Merchants' collateral as a going concern, it is clear that the nonpayment of the tax liability (giving rise to the interest and penalty portion of the administrative expense claim of the IRS) afforded no such benefit. On this basis, this Court agrees with the reasoning in *In Re Annett Ford,* to the extent that it dictates that the collateral of a secured creditor *who agrees to or directly benefits from* the nonpayment of taxes

should have interest and penalties charged against it under Section 506(c). Such is not the case at hand. There is no evidence in the record that leads this Court to the conclusion that Merchants either agreed to or directly benefitted from the incurrence of tax penalties and interest. Accordingly, the bankruptcy court properly denied the interest and penalty portions of the administrative claim of the IRS.

For the foregoing reasons, it is

ORDERED that the judgment of the bankruptcy court is hereby AFFIRMED. Accordingly, it is further

ORDERED that the appeal of the United States of America, Internal Revenue Service is DENIED. It is further

ORDERED that the cross appeal of Merchants Bank is DENIED.