UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellant,

v.

BOATMEN'S FIRST NATIONAL BANK OF KANSAS CITY, Appellee.

UNITED STATES of America, INTERNAL REVENUE SERVICE, Appellee,

v.

BOATMEN'S FIRST NATIONAL BANK OF KANSAS CITY, Appellant.

Nos. 92–2414, 92–2472.

United States Court of Appeals, Eighth Circuit.

Submitted June 14, 1993.

Decided Sept. 29, 1993.

Rehearing and Suggestion for Rehearing En Banc Denied Nov. 15, 1993.

ly reasonable and the motion to suppress was properly denied.

Thomas J. Clark, Dept. of Justice, Washington, DC, argued (Gary R. Allen and Kenneth L. Greene, on the brief), for appellant.

John T. Coghlan of Kansas City, MO, argued (R. Christopher Abele and Dennis M. Garvis on the brief), for appellee.

Before BOWMAN, Circuit Judge, HEANEY, Senior Circuit Judge, and BEAM, Circuit Judge.

HEANEY, Senior Circuit Judge.

After the debtor in this bankruptcy case filed a petition for reorganization under Chapter 11 of the Bankruptcy Code, the appellee bank made loans secured by a super-priority lien pursuant to 11 U.S.C. § 364(d) to allow for the preservation of the bankrupt business as a going concern. After the sale of many of the assets of the preserved business, the bankruptcy was converted to a Chapter 7 liquidation. The Internal Revenue Service (IRS) filed a claim for administrative expenses under 11 U.S.C. § 506(c) for unpaid, post-petition payroll taxes plus interest and penalties. The bankruptcy court approved the payment of the taxes but disallowed the interest and penalties. The district court affirmed and both parties appealed. We affirm in part and reverse in part.

I

Missouri OHM, Inc., operated dry cleaning stores and shirt laundries at forty-three locations in Kansas, Missouri, and Nebraska. It became insolvent and filed a petition under Chapter 11 of the Bankruptcy Code on 25 January 1989. At that time it owed $3,956,423.34 on a secured loan to The Merchants Bank ("the Bank")[1] and $769,741.35 in unpaid federal taxes.

The Bank agreed to extend sufficient post-petition credit to Missouri OHM to cover operating costs so that it could continue as a going concern as its stores were being sold. As the district court noted, the Bank "stood to realize significantly more gain from the sale of its collateral as a going concern rather than as a liquidation of assets. The recognition of this fact by [the Bank] is evident from [its] agreement to subordinate its post-petition superpriority liens to legitimate administrative expenses of the bankruptcy estate." *United States v. The Merchants Bank*, 142 B.R. 889, 892 (W.D.Mo.1992).

Missouri OHM, Inc., now as a debtor in possession, continued to operate and sold

---

1. The Merchants Bank has since been placed in receivership and its successor in interest was the Missouri Bridge Bank, N.A. In April 1993 Boatmen's First National Bank of Kansas City purchased the secured loan at issue in this litigation, and Missouri Bridge Bank ceased to exist as a legal entity. Thus we granted Boatmen's motion to be substituted as the real party in interest.

twenty-one of its stores for $918,000 before a trustee was appointed on 27 April 1989. These proceeds were paid toward the pre-petition debt owed to the Bank. The trustee continued to sell stores as going concerns until the case was converted to a Chapter 7 liquidation on 13 February 1990. On 21 December 1990 the IRS filed its original administrative claim for unpaid withholding and FICA taxes incurred between the filing of the bankruptcy petition and the appointment of the trustee. Its amended claim, filed 10 July 1991, reflected unpaid taxes of $29,-485.50 plus interest of $7,051.05 and penalties of $9,996.05. The trustee's accounting on 15 January 1991 showed cash on hand of only $66,490.47.

The bankruptcy court found that the tax portion of the IRS's claim was properly chargeable against the Bank's collateral under section 506(c), but that the interest and penalties "did nothing to preserve or benefit [the Bank]'s collateral, as [the Bank] did not actually or impliedly consent to the incurrence thereof and, as to [the Bank], the interest and penalties were not reasonable, and would not be paid out of [the Bank]'s collateral to the IRS." *Id.* at 891. The district court affirmed, and the IRS appealed to our court.

## II

■ The general rule is that normal administrative expenses of the bankruptcy estate may not be charged against secured collateral but may share in the distribution of the unencumbered assets of the debtor pursuant to 11 U.S.C. § 503. Section 506(c) of the Bankruptcy Code is the exception to that rule. Section 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." The provision is equitable in origin, preventing a windfall to a secured creditor at the expense of the trustee or debtor in possession by shifting the costs of preserving or disposing of a secured party's collateral from the bankruptcy estate to the secured party.

## A

■ We turn first to the Bank's contention as cross-appellant that the IRS lacks standing to submit its claim and be heard, relying on the language of the statute that makes specific reference only to the trustee. The district court below rejected that argument, citing numerous authorities and noting that such a restrictive reading of the statute would undermine its equitable function. We agree that an administrative claimant such as the IRS has such standing. *See, e.g., In re McKeesport Steel Castings Co.,* 799 F.2d 91, 93–94 (3rd Cir.1986); 3 *Collier on Bankruptcy* ¶ 506–06 n. 7a (Lawrence P. King ed., 15th ed. 1993) (noting contradicting authorities, but asserting that the better position is to allow an administrative claimant to assert its claim under § 506(c)).

## B

■ We turn next to the Bank's argument that both the district and bankruptcy courts erred in allowing the unpaid employment taxes to be paid from its collateral under section 506(c). The district court cited *In re Annett Ford, Inc.,* 64 B.R. 946, 947 (D.Neb. 1986), for the proposition that when "a secured creditor agrees to the continued operation of a business for the purpose of increasing the ultimate gain in the event of a reorganization or liquidation, the necessary administrative expenses, including taxes, incurred during the continued operation directly benefitted the creditor and were thus recoverable under Section 506(c)." *Merchants Bank,* 142 B.R. at 892. We agree with, and affirm, this holding. The bankruptcy court correctly ruled that the IRS could recover the unpaid, post-petition payroll taxes under section 506(c).

## C

In spite of its statement that *Annett Ford* "is indistinguishable from the case at bar," *Merchants Bank,* 142 B.R. at 892, the district court nonetheless parted company with the holding in that case by differentiating between employment taxes and the corresponding penalties and interest in its analysis under section 506(c). The district court found

that although the incurrence of the employment tax liability directly benefitted Merchants by increasing the value of its collateral, "it is clear that the nonpayment of the tax liability . . . afforded no such benefit." *Id.* at 893. The district court thus held that only when a secured creditor agrees to or directly benefits from the "nonpayment" of taxes should the corresponding interest and penalties be charged against the collateral. *Id.* at 893–94.

The district court's interpretation of *Annett Ford* is flawed. The creditor in that case, as here, did not specifically agree to or benefit from the "nonpayment of taxes" as such. Rather, the creditor agreed to the continued operation of the debtor business, anticipating an increased return on the assets of a going concern as opposed to a liquidation. In *Annett Ford*, the decision was a bad bet: the business continued to fail and the collateral did not sell at an improved price. The creditor, however, in the expectation of an overall benefit, agreed to accept the expenses and risks associated with that anticipated benefit. One of those expenses was payroll taxes, and one of the risks was nonpayment of the taxes and its consequences. As the district court noted in *Annett Ford*, taxes, penalties, and interest come as an indivisible bundle along with the opportunity to improve upon the debtor's business:

> Like the taxes themselves, the penalties and interest claimed by the United States are part and parcel with the continued operation of the debtor's business. They directly arise from the debtor's post-petition business activities, and are a part of the foreseeable risk [the creditor] accepted when it agreed to let the business continue. The taxes, penalties and interest come as a package. All three operated to the benefit of the secured creditor, and should be paid out of the liquidation fund.

*Annett Ford,* 64 B.R. at 947.

The "benefit" to which the court referred lies in the ambition of the creditor to preserve and improve its secured collateral and the opportunity to realize that ambition. It is important that the creditors in both *Annett Ford* and the instant case agreed to the post-petition preservation of the debtor business with an eye toward a better return on the collateral. Although a trustee or debtor in possession who incurs administrative expenses in the preservation of the estate, but without the approval of the creditor, cannot expect to recover those expenses under section 506(c) when the creditor receives or could expect to receive no benefit, that is not the case here. The Bank argues that "[t]he IRS did not advance any funds to the debtor-in-possession or to the bankruptcy trustee," Boatmen's Reply Brief at 6, but the nonpayment of taxes was, in effect, a loan from the government. *See In re Allied Mechanical Servs., Inc.,* 885 F.2d 837, 839 (11th Cir. 1989). The dry cleaning stores were maintained as going concerns in part because the payroll taxes were not paid. It follows then that the eventual payment of those taxes *and* the ensuing interest and penalties[2] should be charged against a secured creditor who agrees to expenses that will be incurred to preserve the collateral. In this case, not only did the creditor agree to the preservation of the debtor business as a going concern, which by necessity included paying payroll taxes, but it also received an overall benefit from that preservation, which was not the case in *Annett Ford.*

We adopt the analysis of the *Annett Ford* case, and hold that when a secured creditor agrees to the preservation of the debtor business as a going concern and that preservation requires the payment of payroll taxes, any unpaid post-petition taxes may be charged to the secured collateral, together with any interest and penalties, pursuant to section 506(c) of the Bankruptcy Code.

### III

For the reasons stated above, we affirm the district and bankruptcy courts' decisions finding that the IRS had standing and hold-

---

2. Interest on a tax debt is no different from interest on any other debt, as the Supreme Court explained in *Bruning v. United States,* 376 U.S. 358, 360, 84 S.Ct. 906, 908, 11 L.Ed.2d 772 (1964): "In most situations, interest is considered to be the cost of the use of the amounts owing a creditor and an incentive to prompt repayment and, thus, an integral part of a continuing debt. Interest on a tax debt would seem to fit that description."

ing that post-petition payroll taxes were chargeable against secured collateral under section 506(c). We reverse and remand, however, with regard to both courts' decisions to split the penalties and interest from the taxes themselves for purposes of section 506(c), and direct that the penalties and interest be charged against the Bank's secured collateral.

BOWMAN, Circuit Judge, dissenting.

I believe the Court errs in concluding that the IRS has standing under 11 U.S.C. § 506(c) to surcharge a secured creditor's collateral. Section 506(c) unambiguously provides that *"[t]he trustee* may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c) (1988) (emphasis added). Beyond cavil, the plain language of the statute empowers only the trustee to seek recovery under this section of the Bankruptcy Code. The language of § 506(c) is clear and unambiguous, and it is our duty to comply with this plainly expressed congressional intent. To do otherwise is "to infringe upon Congress' role as maker of laws and judicially add language to the statutory subsection." *Dock's Corner Assocs. v. Boyd (In re Great N. Forest Prods., Inc.)*, 135 B.R. 46, 65 (Bankr. W.D.Mich. (1991)) (limiting standing under § 506(c) to the trustee).

The IRS never has served as a bankruptcy trustee in this case. It follows that the IRS lacks standing to assert a § 506(c) surcharge against the Bank, and it is unnecessary to reach the remaining issues the parties have presented. In my view, the decision of the District Court should be vacated and the court should be directed to dismiss the § 506(c) claim the IRS here asserts. I therefore respectfully dissent.