# United States Court of Appeals

## FOR THE EIGHTH CIRCUIT

_____

No. 97-3859

_____

| | | |
|---|---|---|
| In re: Hen House Interstate, Inc., | * | |
| | * | |
| Debtor. | * | |
| ---------------------------------- | * | |
| Hartford Underwriters Insurance | * | |
| Company, | * | |
| | * | Appeal from the United States |
| Movant - Appellee, | * | District Court for the |
| | * | Eastern District of Missouri. |
| v. | * | |
| | * | |
| Magna Bank, N.A., formerly known as | * | |
| Magna Bank of Illinois, N.A., | * | |
| | * | |
| Respondent - Appellant. | * | |

_____

Submitted: October 22, 1998
Filed: June 7, 1999

_____

Before BOWMAN,[1] Chief Judge, HEANEY, McMILLIAN, RICHARD S. ARNOLD, FAGG, WOLLMAN, BEAM, LOKEN, HANSEN, MORRIS SHEPPARD ARNOLD, and MURPHY, Circuit Judges, <u>en banc</u>.

_____

BOWMAN, Chief Judge.

---

[1]The Honorable Pasco M. Bowman stepped down as Chief Judge of the United States Court of Appeals for the Eighth Circuit at the end of the day on April 23, 1999. He has been succeeded by the Honorable Roger L. Wollman.

Magna Bank, N.A., appeals the judgment of the District Court affirming the judgment of the Bankruptcy Court in favor of Hartford Underwriters Insurance Company. The sole question presented for review by the Court en banc is the threshold question of whether Hartford has statutory standing to surcharge Magna's collateral under 11 U.S.C. § 506(c) (1994). We reverse.

## I.

Magna[2] made various loans to Hen House Interstate, Inc. (Debtor), which owned and operated a number of restaurants, service stations, gift stores, and an outdoor advertising firm. To secure the loans, Magna took a security interest in essentially all of the Debtor's real and personal property. On September 5, 1991, the Debtor filed a petition for relief under Chapter 11 of the Bankruptcy Code in the United States Bankruptcy Court for the Eastern District of Missouri. When the Debtor filed its petition, it was indebted to Magna in the amount of approximately $4.1 million. The Debtor retained possession of its assets and continued operation of its businesses after commencing the Chapter 11 proceedings.

The day after the Debtor filed its Chapter 11 petition, Magna agreed to lend the Debtor an additional $300,000 to help finance the Debtor's post-petition reorganization efforts. The Bankruptcy Court approved the loan agreement in its final financing order and authorized the Debtor to use the proceeds of the post-petition loan and the cash collateral that was subject to Magna's security interest to pay expenses set forth in an appended budget. The budget allowed for workers' compensation expenses in the amount of approximately $8600 per month. Upon

[2]Magna is the successor in interest to Landmark Bank of Illinois. We refer to Magna herein notwithstanding that some of the facts pertain to Landmark Bank prior to its acquisition by Magna, and notwithstanding that on October 9, 1998 Magna was absorbed by merger into Union Planters National Bank.

approval of the loan agreement, Magna disbursed the entire $300,000 of loan proceeds to the Debtor.

Despite the additional financing provided under the post-petition loan agreement, the Debtor's attempts at reorganization failed. In January 1993, the Bankruptcy Court converted the Debtor's Chapter 11 case into a Chapter 7 liquidation proceeding and appointed a trustee of the Chapter 7 estate.

During the Debtor's attempted Chapter 11 reorganization, Hartford provided workers' compensation insurance coverage to the Debtor. The terms of the insurance policy required the Debtor to pay a premium to Hartford each month. The Debtor made an initial premium deposit and a subsequent premium payment, but otherwise failed to pay the monthly premium required by the policy. The unpaid premiums amount to $51,871.40.

When the Chapter 11 reorganization failed and the Debtor's case was converted to a Chapter 7 proceeding, Hartford brought an action pursuant to Bankruptcy Code § 503 seeking the allowance of its claim as an administrative expense and Bankruptcy Code § 506(c) seeking to recover the unpaid premiums by surcharging Magna's collateral. The Bankruptcy Court, following the holding of a three-judge panel of our Court in United States, Internal Revenue Service v. Boatmen's First National Bank, 5 F.3d 1157, 1159 (8th Cir. 1993), that non-trustees have standing under § 506(c) to surcharge a secured creditor's collateral, determined that Hartford had standing to seek recovery pursuant to § 506(c) and ordered the surcharge of Magna's collateral. Magna appealed to the District Court claiming, inter alia, that § 506(c) did not accord Hartford standing to assert its claim. The District Court, also relying on Boatmen's, affirmed the judgment of the Bankruptcy Court, and Magna appealed to this Court.

A three-judge panel of this Court affirmed the judgment of the District Court, holding, among other things, that Boatmen's was controlling and that Hartford

therefore had standing to seek recovery under § 506(c). But two members of the panel expressed their belief that <u>Boatmen's</u> had been wrongly decided and should be reconsidered by the Court en banc. <u>See</u> <u>Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.)</u>, 150 F.3d 868, 871 n.4 (8th Cir. 1998); <u>id.</u> at 873 (Hansen, J., concurring). We granted Magna's suggestion for rehearing en banc on the issue of Hartford's standing to seek recovery and vacated the panel opinion. We now overrule <u>Boatmen's</u> to the extent it construes § 506(c) to empower a non-trustee to surcharge an allowed secured creditor's collateral under that section and hold that Hartford, a non-trustee claimant, lacks standing to assert a § 506(c) claim.

## II.

As the second reviewing court, we apply the same standard as that applied by the District Court; we review de novo the Bankruptcy Court's determination of the single issue of law presented here. <u>See</u> <u>Halverson v. Estate of Cameron (In re Mathiason)</u>, 16 F.3d 234, 235 (8th Cir. 1994).

Initially, we note that Hartford asserts no claim against Magna or its collateral outside of the Hen House bankruptcy proceeding. The nature and extent of the potential liability of Magna, as an allowed secured creditor in that bankruptcy proceeding, is established by the Bankruptcy Code; more particularly, it is established for purposes of this case by § 506(c). Despite arguments made by Hartford asserting its § 506(c) standing to surcharge property securing Magna's claim based on other provisions of the Bankruptcy Code, the fact is that § 506(c) is the only provision of the Code that directly addresses the issue of standing that is before us. Moreover, § 506(c) is the only provision of the Code that authorizes any party to a bankruptcy proceeding to recover from property securing the claim of an allowed secured creditor such as Magna. It would be extremely odd were Congress to have expanded the potential § 506(c) liability of allowed secured creditors by means of the other Code

-4-

provisions put forward by Hartford, which in one way or another deal with the assertion of claims against the bankruptcy estate, as distinguished from claims against the property of allowed secured creditors.[3] We do not believe Congress intended to do any such thing and, therefore, we focus on § 506(c).

Section 506(c) clearly states, "The trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim." 11 U.S.C. § 506(c) (1994) (emphasis added). The proper construction of any statute, the Bankruptcy Code included, begins with the language of the statute itself. See United States v. Ron Pair Enters., Inc., 489 U.S. 235, 241 (1989) (construing Bankruptcy Code § 506(b) according to its plain language); Harmon v. United States, 101 F.3d 574, 583 (8th Cir. 1996). The natural reading of § 506(c) entitles only the

---

[3]The general rule is that administrative expenses cannot be charged against secured collateral and are chargeable against only the unsecured collateral of the estate pursuant to Bankruptcy Code § 503. See 11 U.S.C. § 503(a) (1994); Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.), 57 F.3d 321, 324 (3d Cir. 1995); In re Swann, 149 B.R. 137, 143 (Bankr. D.S.D. 1993). Therefore, Hartford, despite its argument to the contrary, may not seek to surcharge Magna's collateral under § 503 and may look only to § 506(c) for that purpose.

Hartford seeks standing under Bankruptcy Code § 1109(b) as well, see 11 U.S.C. § 1109(b) (1994) ("A party in interest, including . . . a creditor . . . may raise and may appear and be heard on any issue in a case under this chapter."), but § 1109(b) is not the correct avenue for recovery for the reason that § 1109(b) is inapplicable to the Chapter 7 proceeding which underlies this case. See In re Taylor & Assocs., L.P., 191 B.R. 374, 381-82 n.5 (Bankr. E.D. Tenn. 1996) ("Section[] 1109 . . . [is] applicable exclusively to Chapter 11 cases and ha[s] no application to Chapter 7."); cf. In re Polo Club Apartments Assocs. L.P., 150 B.R. 840, 856-57 (Bankr. N.D. Ga. 1993) (noting that subchapter I of Bankruptcy Code Chapter 11 applies only in cases under Chapter 11, and does not apply to a case converted from Chapter 11 to Chapter 7).

trustee to seek to surcharge property securing the claim of an allowed secured creditor under that section.[4] When the language of the Bankruptcy Code is clear and unambiguous, "our sole function . . . is to enforce it according to its terms." Rake v. Wade, 508 U.S. 464, 471 (1993) (internal quotations and citations omitted) (interpreting "unqualified terms" of Bankruptcy Code § 506(b)); see also Patterson v. Shumate, 504 U.S. 753, 761 (1992) (stating clarity of § 541(c)(2) of Bankruptcy Code obviates need for inquiry beyond language of statute).

Hartford correctly points out that our conclusion here is not the consensus of the circuits that have considered the issue. A majority of those circuits has held that § 506(c) grants standing to non-trustees to pursue surcharge claims under that section. See Loudoun Leasing Dev. Co. v. Ford Motor Credit Co. (In re K & L Lakeland, Inc.), 128 F.3d 203, 206 (4th Cir. 1997) (listing cases). But each of the circuits arriving at a conclusion contrary to the one we reach today has done so by

---

[4]Hartford has made an issue of Bankruptcy Code § 1107(a), which provides that Chapter 11 debtors in possession shall, with some exceptions, have "all the rights . . . and powers, and shall perform all the functions and duties," of trustees. 11 U.S.C. § 1107(a) (1994). The express language of § 1107(a) therefore compels the unremarkable conclusion that Chapter 11 debtors in possession may do most of the things trustees may do. In this case, Hartford is neither a Chapter 11 debtor in possession nor a bankruptcy trustee.

Likewise, though Bankruptcy Code §§ 901, 902 and 1203 explicitly grant municipalities in Chapter 9 cases and family farmers in Chapter 12 cases some of the rights, powers, functions and duties of trustees serving in cases under Chapter 11, see 11 U.S.C. §§ 901(a), 902(5), 1203 (1994), this is not a Chapter 9 or 12 case and Hartford is not a municipality or a family farmer seeking to reorganize. That Congress chose to expressly grant the enumerated parties carefully circumscribed trustee status in limited circumstances demonstrates only that, had Congress intended a claimant such as Hartford to have § 506(c) standing in the present circumstance, it would have said so. Particularly appropriate here is the ancient canon stating that expressio unius est exclusio alterius.

circumventing the plain language of the statute and resting its determination instead upon policy considerations and equitable concerns. See In re Parque Forestal, Inc., 949 F.2d 504, 511-12 (1st Cir. 1991) ("[The] courts of appeals which have considered the question have permitted recovery by third parties who equitably come to stand in the trustee's shoes."); Precision Steel Shearing, Inc. v. Fremont Fin. Corp. (In re Visual Indus., Inc.), 57 F.3d 321, 325 (3d Cir. 1995) ("Although § 506(c) in terms refers only to recovery by the trustee, we . . . have held that administrative claimants other than trustees have standing to recover under § 506(c), particularly when no other party has an economic incentive to seek recovery on the claimant's behalf."); New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers, Ltd.), 924 F.2d 74, 76-77 (5th Cir. 1991) ("Despite the seemingly unambiguous language, courts have allowed a [non-trustee] claimant to use § 506(c) . . . ."); North County Jeep & Renault, Inc. v. General Elec. Capital Corp. (In re Palomar Truck Corp.), 951 F.2d 229, 232 (9th Cir. 1991) ("No compelling policies are served by a restrictive reading of § 506(c) . . . ."), cert. denied, 506 U.S. 821 (1992). Policy considerations and equitable concerns, however, are impermissible bases for statutory interpretation when, as here, the language of the statute is clear and unambiguous. See BFP v. Resolution Trust Corp., 511 U.S. 531, 540 (1994) (eschewing policy determinations for which Bankruptcy Code gives no authority); McCuskey v. Central Trailer Servs., Ltd., 37 F.3d 1329, 1332 (8th Cir. 1994) (declining trustee's invitation to turn to bankruptcy policy considerations to guide interpretation of plain language of Bankruptcy Code § 546(a)(1)). "[W]hatever equitable powers remain in the bankruptcy courts must and can only be exercised within the confines of the Bankruptcy Code." Norwest Bank Worthington v. Ahlers, 485 U.S. 197, 206 (1988). We therefore respectfully disagree with those circuits holding that § 506(c) grants non-trustees standing to seek recovery under that section.

More persuasive is the determination of the Court of Appeals for the Fourth Circuit that "[t]he language of § 506(c) is clear and unambiguous. It grants only trustees the authority to seek recovery of postpetition costs and expenses from the

collateral of a secured creditor." Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 484 (4th Cir. 1994); see also K & L Lakeland, 128 F.3d at 206-07.

Moreover, although we base our holding on the plain language of § 506(c), we note that the position espoused by Hartford would undermine the carefully crafted equality-of-distribution scheme fundamental to the operation of the Bankruptcy Code. See Begier v. IRS, 496 U.S. 53, 58 (1990) ("Equality of distribution among creditors is a central policy of the Bankruptcy Code."). Entirely consistent with this scheme is § 506(c)'s grant of standing to a bankruptcy trustee to recover administrative expenses from the property securing the claim of an allowed secured creditor, the proceeds of which recovery become a portion of the bankruptcy estate and are distributed pro rata among creditors according to their relative priorities. In contrast, the result of the position urged by Hartford would be that the administrative expenses recovered by a non-trustee claimant would not be incorporated into the bankruptcy estate or otherwise contributed to appropriate distribution of the debtor's property among its creditors. Such a result would be incompatible with the fundamental equal distribution goals of the Bankruptcy Code. In addition, as the Fourth Circuit suggested in JKJ Chevrolet, to allow non-trustee claimants (other than the debtor) to bring § 506(c) claims is to invite "a flood of satellite litigation by those seeking to avoid a pro rata division of the estate." 26 F.3d at 484 n.6 (citing Boyd v. Dock's Corner Assocs. (In re Great N. Forest Prods., Inc.), 135 B.R. 46, 69 (Bankr. W.D. Mich. 1991)).

Finally, for the first time in this litigation Hartford asserts standing under Federal Rule of Bankruptcy Procedure 7071 to enforce the terms of the final financing order of the Bankruptcy Court. See Fed. R. Bankr. P. 7071 (incorporating Fed. R. Civ. P. 71) ("When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if a party . . . ."). The final financing order directs the Debtor to pay expenses out of

cash collateral covered by Magna's security interest.  See In re Hen House Interstate, Inc., No. 91-45623-293, para. 24, at 17 (Final Order of Bankruptcy Court).  Rule 7071, however, was not the basis of the claim asserted by Hartford in its application to the Bankruptcy Court, in which Hartford sought to surcharge Magna's collateral pursuant to Bankruptcy Code § 506(c).  Having stated only a § 506(c) surcharge claim in its complaint and throughout this litigation, Hartford cannot now, after the case has come to the rehearing en banc stage in this Court, embark upon a different claim never pleaded to the Bankruptcy Court and assert that any standing to bring that claim is a ground for standing in the § 506(c) claim it actually brought.  That Hartford might or might not have standing to bring a Rule 7071 claim is beside the point, for that is a new claim that cannot initially be brought forward at the appellate level.[5]  We therefore do not reach the issue of Hartford's standing to bring a Rule 7071 claim.  Cf. Stupak-Thrall v. United States, 89 F.3d 1269, 1275 n.4 (6th Cir. 1996) (declining to hear issue urged for first time to panel in reply brief and reasserted in supplementary brief to court en banc; otherwise party raising argument on en banc rehearing would

_____

[5]Moreover, the Rule 7071 claim is not within the scope of our order granting "rehearing en banc . . . limited to the issue of standing."  Hartford Underwriters Ins. Co. v. Magna Bank, N.A. (In re Hen House Interstate, Inc.), No. 97-3859EMSL (8th Cir. Sept. 22, 1998) (Order Granting Rehearing En Banc).  Although our order (the purpose of which, after all, was to limit rehearing to a single issue, not to invite new claims) refers generically to "the issue of standing," we could only have intended that phrase to mean the issue of § 506(c) standing.  In its motion to file a supplemental brief after rehearing en banc had been granted, Hartford made no reference to Rule 7071.  Instead, Hartford emphasized that "[t]he question of standing under section 506(c) is one of great importance to administrative claimants such as Hartford, and the Court's en banc resolution of this issue will affect many such claimants in innumerable bankruptcy cases."  Appellee's Motion to File Supplemental Brief at 2-3 (Sept. 22, 1998).  Likewise, Magna, in its suggestion for rehearing en banc, limited discussion to § 506(c).  For these reasons, it strains credulity to think that our order granting rehearing en banc invited Hartford to assert a Rule 7071 claim at this late stage.  We are thoroughly satisfied that our review is limited to the issue of Hartford's standing to bring a § 506(c) claim, the claim that Hartford in fact asserted.

"be allowed to deprive the panel of the ability to address the issue first"), cert. denied, 117 S.Ct. 764 (1997); Anderson v. Beatrice Foods Co., 900 F.2d 388, 397 (1ˢᵗ Cir.) (order denying rehearing) (holding party who failed to assert argument in district court, and in supplemental briefing and oral argument before panel, "cannot be permitted to raise a new issue for the first time on petition for rehearing in the court of appeals"), cert. denied, 498 U.S. 891 (1990).

The single issue for determination by this Court en banc remains the issue stated at the outset: whether Hartford has standing under § 506(c). We hold that § 506(c) permits only the trustee to proceed under that section. Hartford therefore lacks standing to surcharge Magna's collateral under § 506(c).

### III.

United States, Internal Revenue Service v. Boatmen's First National Bank, 5 F.3d 1157 (8ᵗʰ Cir. 1993), which held that parties other than the trustee have standing to surcharge property securing the claim of an allowed secured creditor under § 506(c), is overruled. The decision of the District Court is reversed. The case is remanded to the District Court with instructions that the Bankruptcy Court be directed to vacate its judgment and dismiss Hartford's § 506(c) claim for lack of standing.

HEANEY, Circuit Judge, dissenting, with whom MCMILLIAN, RICHARD S. ARNOLD, BEAM, and MURPHY, Circuit Judges, join.

Today this court rejects the view of four other circuits, ignores the teaching of the leading bankruptcy treatise, and departs from the well-established view that administrative claimants have § 506(c) standing to enforce administrative claims against secured creditors who have benefitted by the goods or services provided by an administrative claimant. Because the prudential standing doctrine requires this court to confer § 506(c) standing to Hartford, I respectfully dissent.

An administrative expense may be surcharged against a secured creditor's collateral if the expense was necessary, reasonable, and directly benefitted the secured creditor, Brookfield Prod. Credit Ass'n v. Borron, 738 F.2d 951, 952-53 (8th Cir. 1984), or if a secured party either directly or impliedly consented to the expense, Daniel v. AMCI, Inc. (In re Ferncrest Court Partners), 66 F.3d 778, 782 (6th Cir. 1995). The original panel opinion stated that

> Magna agreed to the continued operation of the Debtor's businesses in the hopes of receiving a greater return through reorganization rather than through liquidation. Magna thereby "agreed to accept the expenses and risks associated with [the] anticipated benefit." One such expense is workers' compensation insurance. Under Missouri law, an operating business is obligated to maintain workers' compensation insurance unless it can demonstrate that it has the ability to self-insure. See Mo. Rev. Stat. § 287.280 (Supp. 1998).

Hartford Underwriters Ins. Co. v. Magna Bank (In re: Hen House Interstate, Inc.), 150 F.3d 868, 872 (8th Cir. 1998) (quoting IRS v. Boatmen's First National Bank, 5 F.3d 1157, 1160 (8th Cir.1993)). The original panel further held that "Magna consented to the workers' compensation insurance expenses," and proceeded to the issue of standing. Hartford, 150 F.3d at 871. The panel concluded that Hartford had standing under Boatmen's. See id. at 871. This court granted Hartford's petition for rehearing solely on the issue of standing.

I agree with the court that the sole issue before us is whether Hartford has standing to surcharge Magna's collateral. I believe it has. Four circuits have adopted this view. See e.g. North County Jeep & Renault, Inc. v. General Elec. Capital Corp. (In re Palomar Truck Corp.), 951 F.2d 229, 232 (9th Cir. 1991), cert. denied, 506 U.S. 821 (1992); In re Parque Forestal, Inc., 949 F.2d 504, 511 (1st Cir. 1991); New Orleans Pub. Serv., Inc. v. First Fed. Sav. & Loan Ass'n (In re Delta Towers, Ltd.), 924 F.2d 74, 77 (5th Cir. 1991); Equitable Gas Co. v. Equibank N.A. (In re

-11-

McKeesport Steel Castings Co.), 799 F.2d 91, 94 (3d Cir. 1986). The court's view is also supported by the leading scholarly work on bankruptcy:

> The reasoning behind the approach which extends standing to creditors and other claimants is that a secured creditor who received a direct benefit from the rendition of services or provision of goods by an administrative claimant . . . should have the collateral charged for that benefit, regardless of whether the proceeds of the charge are paid to the trustee in reimbursement for the trustee's prior payment to the claimant, or are paid to the claimant directly. Otherwise, if the trustee does not have available funds to pay the claimant, the trustee has no economic incentive to seek a recovery under section 506(c) with respect to amounts that will be paid over to the claimant. As a result, the secured creditor may obtain a windfall at the expense of the unpaid claimant.

4 Collier on Bankruptcy ¶ 506.05[8] at 506-142-43 (Lawrence P. King ed., 15th ed. 1998). The majority view has been in effect since 1986, and I believe that Congress has acquiesced to the majority's resolution of the conflict. See Johnson v. Transportation Agency, 480 U.S. 616, 629 n.7 (1987).

Had Congress intended to limit § 506(c) standing to trustees, it could have included the word "only" in the statute. Because it failed to do so and because Congress did not expressly deny § 506(c) standing to administrative claimants, the prudential standing doctrine dictates that this court confer § 506(c) standing on Hartford.

Any determination of standing "involves both constitutional limitations on federal-court jurisdiction and prudential limitations on its exercise." Warth v. Seldin, 422 U.S. 490, 498 (1975). In addition to the threshold requirements of Article III, the applicable prudential standing requirement is "whether the interest sought to be protected by the complainant is arguably within the zone of interests to be protected or regulated by the statute." Data Processing Serv. v. Camp, 397 U.S. 150, 153 (1970). While Congress can limit standing beyond that allowed by Article III of the

United States Constitution, "[w]here statutes are concerned, the trend is toward enlargement of the class of people who may protest . . . ." Id. at 154. While Data Processing applied the zone-of-interests test to suits under the Administrative Procedure Act, the Supreme Court has since listed it among the other generally applicable prudential standing requirements. See Bennett v. Spear, 520 U.S. 154, 162 (1997). Where Congress has neither expressly allowed nor denied administrative claimants § 506(c) standing, the Supreme Court has held that "Congress legislates against the background of our prudential standing doctrine, which applies unless it is expressly negated." Id. at 163 (emphasis added); see also Data Processing, 397 U.S. at 154 ("Congress can, of course, resolve the question one way or another, save as the requirements of Article III dictate otherwise").

There can be no doubt that Hartford has Article III standing, and because Congress has not expressly negated the prudential standing doctrine in § 506(c), Hartford also has § 506(c) standing. To satisfy Article III standing, a plaintiff must allege that (1) he or she suffered or imminently will suffer an injury in fact; (2) the injury is fairly traceable to the defendant's conduct; and (3) a favorable court decision is likely to redress the injury. See Florida Gen. Contractors v. Jacksonville, 508 U.S. 656, 663-64 (1993) (citations omitted). Here, Hartford provided statutorily-required workers' compensation insurance and was not paid. Magna consented to the court-authorized expenditures and benefitted from them in two ways. First, Magna benefitted from the heightened possibility it would recoup the full value of its security interest. Second, it benefitted insofar as liquidating the various businesses as going concerns optimized its profit from liquidation. Finally, a favorable decision to Hartford would undoubtedly redress its injury.

Having satisfied the general requirements for Article III standing, "the applicable prudential standing requirement [is] 'whether the interest sought to be protected by [Hartford] is *arguably* within the zone of interests to be protected or regulated by the statute.'" Bennett, 520 U.S. at 162 (citing Data Processing, 393 U.S.

-13-

at 153) (emphasis added). "The [zone-of-interests] test is not meant to be especially demanding; in particular, there need be no indication of congressional purpose to benefit the would-be plaintiff." Clarke v. Securities Indus. Ass'n, 479 U.S. 388, 399-400 (1987) (footnote omitted). Section 506(c) provides that "[t]he trustee may recover from property securing an allowed secured claim the reasonable, necessary costs and expenses of preserving, or disposing of, such property to the extent of any benefit to the holder of such claim. 11 U.S.C. § 506(c). Here, it is clear that Hartford's claim was reasonable and necessary. Indeed, the continuance of workers' compensation insurance was mandated by law if Hen House was to continue in business. Additionally, the expenditures benefitted Magna as discussed above. Finally, Hartford's § 506(c) standing is consistent with other provisions of the Bankruptcy Code. See, e.g., 11 U.S.C. §§ 503(a), 1109(b).

The court joins the Fourth Circuit[6] in its assertion that conferring § 506(c) standing to administrative claimants circumvents the Bankruptcy Code's distribution scheme:

> Allowing a claimant to proceed directly against a secured creditor would circumvent this distribution scheme, potentially causing an inequitable division of the estate. For example, if an estate has no unencumbered assets, an administrative claimant recovering directly from a secured creditor might receive full reimbursement while other administrative claimants, whose services were also necessary to the preservation of the estate, would receive nothing. An administrative claimant proceeding against a secured creditor in effect would be granted priority over the

---

[6]While the court relies heavily on the reasoning of the Fourth Circuit, even that court has recognized the fact that a secured creditor should not be able to immunize its windfall under the theory that administrative claimants lack § 506(c) standing. See Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 485 n.7 (4th Cir. 1994) (recognizing the possibility that "a bankruptcy court could grant derivative standing to a claimant . . . to prosecute a § 506(c) action.").

other claimants in its same class. We are of the opinion that if Congress had intended to alter so fundamentally the structure and principles underlying bankruptcy proceedings, it would have done so expressly.

Ford Motor Credit Co. v. Reynolds & Reynolds Co. (In re JKJ Chevrolet, Inc.), 26 F.3d 481, 484 (4th Cir. 1994) (footnotes and citations omitted). In my view, Congress expressly altered the distribution scheme when it enacted § 506(c). As noted in our Boatmen's opinion, administrative expenses are generally paid from the unencumbered assets of the bankruptcy estate rather than secured collateral. See 5 F.3d at 1159; see also In re JKJ Chevrolet, Inc., 26 F.3d at 483 (recognizing general rule). Section 506(c) clearly alters the general rule by requiring secured creditors to pay administrative expenses when, *inter alia*, the expenditures benefit the secured creditor. Thus, the obligation created by § 506(c), not the identity of the party enforcing that obligation, alters the distribution scheme.

The court departs from its view that it will not entertain equitable considerations and joins the Fourth Circuit in its argument that conferring § 506(c) standing to administrative claimants will lead to inequitable division of bankruptcy estates because particular administrative claimants may be compensated while other administrative claimants, unsecured creditors, or even secured creditors could go unpaid. Even if this were true, this is a criticism of the obligation created by § 506(c), not of allowing a particular party to enforce that obligation. Congress, not the courts, codified an equitable mechanism in § 506(c) by which a secured creditor may be compelled to reimburse the administrative expenses that preserve or dispose of the secured property to the extent that those expenditures have increased the property's value.

Finally, I believe that Hartford's claim that Federal Rule of Bankruptcy Procedure 7071 provides an independent basis for recovery may properly be

-15-

considered by this court. The court argues that because Hartford did not raise this claim before the original panel in this case and raised it in the first instance before this court en banc, we should not consider the claim. In my view, Hartford may be excused from failing to raise the claim before the original panel because the facts of this case fall squarely within the law established in our Boatmen's opinion; and as Chief Judge Bowman correctly noted in our original panel opinion, "'[o]nly the court en banc can overrule another panel's decision.'" Hartford, 150 F.3d at 871 (quoting Smith v. Copeland, 87 F.3d 265, 269 (8th Cir. 1996)). Because we are writing on a clean slate as a court en banc, we may certainly entertain Hartford's claim now.

Federal Rule of Bankruptcy Procedure 7071 incorporates Rule 71 of the Federal Rules of Civil Procedure, which provides: "When an order is made in favor of a person who is not a party to the action, that person may enforce obedience to the order by the same process as if he were a party . . . ." Fed. R. Civ. P. 71. Hartford argues that the bankruptcy court, with Magna's express consent, directed the debtor to pay the premiums for the workers' compensation insurance that Hartford provided. Because it was the intended beneficiary of the order, Hartford argues that it may recover from Magna under Rule 7071. In the interests of judicial economy, I would hold that, even if Hartford does not have standing under § 506(c), it should recover under Rule 7071.

Today this court overrules six years of Eighth Circuit law, rejects the views of four other circuits, and ignores the teaching of the leading bankruptcy treatise. It does this in disregard of the prudential standing doctrine. For the reasons stated above, I respectfully dissent.

A true copy.

Attest:

   CLERK, U.S. COURT OF APPEALS, EIGHTH CIRCUIT.